The Lee Brothers Furniture Company *vs.* E. J. Cram.

New Haven & Fairfield Cos., Oct. T., 1893. Andrews, C. J., Carpenter, Torrance, Fenn and Baldwin, Js.

Chapter 147 of the Public Acts of 1893 requires that all contracts for the sale of personal property conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing and acknowledged and recorded in the town clerk's office where the vendee resides; and that all conditional sales not so made, acknowledged and recorded shall be regarded as absolute sales, " *except against the vendor and his heirs.*" Held:—

1. That the original vendor of goods sold under such a contract not recorded could nevertheless replevy the goods from a *bonâ fide* purchaser for value from the conditional vendee, where the latter had acquired no title from the original vendor at the time of suit.
2. That the statute is not wholly without effect, since it might operate against the assigns of the original vendor and against the assigns of his heirs.

Courts are not at liberty to speculate upon any supposed actual intention of the legislature. A legislative intention not expressed in some appropriate manner has no legal existence.

[Argued October 25th—decided December 13th, 1893.]

ACTION of replevin to recover certain goods and chattels wrongfully detained by the defendant; brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.;* facts found and case reserved for the advice of this court. The plaintiff, a corporation organized under the laws of this state and located at Bridgeport, delivered to one Skidmore on the 10th day of August, 1893, the goods and chattels referred to in the following agreement, subject to the terms and conditions therein contained.

" This agreement witnesseth, that I, Robert E. Skidmore, now residing at No. 285½ Fairfield Avenue, in the city of Bridgeport, have leased of The Lee Brothers Furniture Co., of said Bridgeport, under an agreement to purchase, the following articles of personal property, the title to said property to remain in said The Lee Brothers Furniture Co., the vendor, until payment in full shall have been made to said The Lee Brothers Furniture Co., in the sum of $105, the purchase price of said articles : 75 yds. Brussels carpet, tapestry, one roll-top desk.

" For which articles of personal property I agree to pay as follows, to wit: Five dollars per week, commencing on Tuesday, August 29th, 1893, and $5.00 on the Tuesdsy of each week next thereafter, with the understanding that after I shall have promptly and fully paid said rent, to the amount of $105, then I shall thereby become the purchaser of the above described articles.

" And in consideration of said leasing, I further agree that

I will use said articles of personal property carefully, and not to suffer any other person to have custody or control of the said articles; that I will not sell, underlet, or remove them, nor suffer them to be removed from the house No. 285½ Fairfield Avenue, Bridgeport, Conn., nor assign this lease, without the written consent of said vendor.

" And I hereby further covenant that if the said rent shall not be fully paid on or before the days stipulated, or if I shall violate in any respect any agreement or condition on my part herein, then this lease may, at the option of the said vendor, his executors, administrators or assigns, agent or agents, be forfeited and ended without notice, and that I will immediately return the said articles of personal property to said vendor in as good condition as when received, ordinary wear excepted; and that upon such forfeiture, he or either of his agents, may with or without process of law, take actual possession thereof, and for that purpose or to search for the same, may enter any premises of mine, or to which I have access, using such force as may be necessary.

" And I hereby waive any right or action for trespass or damage therefor, and agree to pay said vendor all costs, expenses, and fees of every kind incurred by them in the recovery of said property, and in event of such forfeiture, said vendor, his executors, administrators or assigns, may at his or their option, affirm this lease, and sue for and recover any amount due thereon with interest and costs.

" Witness my hand and seal, this 10th day of August, 1893.

" ROBERT E. SKIDMORE, [SEAL.]

" Fairfield County, *ss.* Bridgeport, Conn., Aug. 10, A. D. 1893.

" Personally appeared, Robert E. Skidmore, the signer and sealer of the foregoing instrument, and acknowledged the same to be his free act and deed, before me,

" CHARLES R. CROWTHER,

[SEAL.]                                   " Notary Public."

The other facts are sufficiently stated in the opinion.

*A. B. Beers,* for the plaintiff.

*Stiles Judson, Jr.,* for the defendant.

TORRANCE, J.   On the 10th of August, 1893, the plaintiff delivered to one Skidmore, a resident of the town of Bridgeport in this state, certain goods under a written agreement set out upon the record, signed by Skidmore, conditioned that the goods should remain the property of the plaintiff till paid for in full.   The agreement has never been recorded in the town clerk's office in Bridgeport.   On the 23d of August, 1893, Skidmore, without having paid for the goods in full or at all, and without the knowledge or consent of the plaintiff, sold the goods to the defendant, who bought them in good faith for an adequate consideration, believing Skidmore to be the owner of them, and without notice to the contrary, and after he had examined and found that there was no record of any conditional sale of them to Skidmore. The plaintiff, after demand and refusal, brought the present action of replevin for the goods, and upon the facts found the case was reserved for the advice of this court.

There is but one question in the case, and that is whether the failure to record the agreement in the town clerk's office in Bridgeport made the transaction between the plaintiff and Skidmore an absolute sale.   This question arises under the statute passed at the last session of the legislature of this state, which reads as follows :—

"Section 1.  All contracts for the sale of personal property, conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing, describing the property and all the conditions of such sale, acknowledged before some competent authority, and recorded in the town clerk's office in the town where the vendee resides.

"Sec. 2.  All conditional sales of personal property which shall not be made in conformity with the provisions of the preceding section shall be held to be absolute sales, except against the vendor and his heirs, and all such property shall be liable to be taken by attachment and execution for the

debts of the vendee, in the same manner as any other property not exempted by law." Public Acts of 1893, chap. 147.

It must be conceded that the agreement in question is a contract for the sale of property within the meaning of this act, and that by failing to record it it was not "made in conformity with the provisions" of the first section.

The first section is mandatory in its terms, and apparently on its face applies to all agreements of conditional sale, but it does not state what the consequence or effect shall be of a failure to conform to its provisions. To ascertain these recourse must be had to the second section, and that provides that in case of such failure such agreement "shall be held to be" an absolute sale. That is the effect and the only effect that is to follow such failure.

"When a statute specifies the effects of a certain provision, courts will presume that all the effects intended by the lawmaker are stated." *Perkins* v. *Thornburgh*, 10 Cal., 189.

Furthermore, by the second section even this effect is not to follow such failure as against "the vendor and his heirs." The language is—"shall be held to be absolute sales, except against the vendor and his heirs." This language is plain, certain and unambiguous, and no reasonable doubt can arise concerning its meaning. It means, if language is capable of expressing such a meaning, that the vendor and his heirs are excepted out of the class of persons to be affected by the prescribed consequence or effect of failure to comply with the provisions of the act. As against them contracts of the kind described in the first section, which do not comply with its provisions, are not to be held to be absolute sales, but are to remain unaffected by the statute.

Such language does not require the aid of rules of construction or of interpretation to make the intention and meaning of the law-maker plain and clear. Interpretation and construction in the ordinary sense, in reference to such language, are alike out of place. "If the words are free from ambiguity and doubt, and express plainly and clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It

is not allowable to interpret what has no need of interpretation." *McCluskey* v. *Cromwell*, 11 New York, 601.

Against such a construction of the statute however, several objections have been urged by the defendant which it may be well to consider briefly.

It is said that the statute ought to be construed as if it read "shall be held to be absolute sales except as between the vendor and the vendee or their heirs." Under the circumstances we think this would be legislation not interpretation. Where is the authority for such an interpretation? It is found by assuming that the legislature intended such a result because no other would remedy the mischiefs and evils at which the statute was evidently aimed; that it intended to protect creditors and *bonâ fide* purchasers, and that this construction alone will effectuate that intent. In answer to this it must be remembered that the word "intention," when used in this connection, is susceptible of at least two meanings; it may refer either to that which the legislature in fact intended to do, or to that intention as found from the words employed to make it manifest.

Now the question before a court is never what did the legislature actually intend in the first sense, but what intention has it expressed. It is always—" what is the meaning of what the legislator has said?" and not " what did the legislator actually mean to say?" Now if the legislature "intended," in the first sense of the word, to protect creditors and *bonâ fide* purchasers as claimed, they have failed to express that intention in any way by which it can be known to a court. Such an intent is not to be found in the words employed in this act, but, on the contrary, an opposite intent is clearly manifested. A legislative intention not expressed in some appropriate manner has no legal existence. We are not at liberty to speculate upon any supposed actual intention of the legislature. " We are not at liberty to imagine an intent and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting and remodeling with the view of making the letter express

an intent which the statute in its native form does not express." *Alexander* v. *Worthington*, 5 Md., 485.

If the legislature had really intended to protect by this act creditors and *bonâ fide* holders to the extent claimed, we think it would have found a way to express that intent quite clearly. It had no difficulty in expressing such intention clearly in the " act relating to conditional sales of railway equipments," passed at the same session. Public Acts of 1893, chap. 119. In that act it is provided expressly that no contract of the kind therein described " hereafter made, shall be valid as against any subsequent attaching creditor, or any subsequent *bonâ fide* purchaser for value without notice," unless the contract is evidenced by an instrument executed, acknowledged and recorded as the act prescribed.

The absence of any such clear and explicit language in the act in question in this case, passed apparently at a subsequent period in the session, is quite significant. This significant omission, coupled with the language actually employed, leads most irresistibly to the conclusion that the legislature had no such intent as the defendant claims in passing the act now in question.

It is further said that the legislature must have intended the act in question to have some operation, else it would not have passed it; and that to construe it as we have done is to say that it can have no operation. Now if it were strictly and literally true that the second section made the provisions of the entire act " of none effect," it would be the duty of this court to so declare, provided it clearly appeared from the language used that the legislature intended just such a result. Of course such an intent would not be imputed nor inferred unless the language was very plain and clear. In such a case, however, if one can be supposed, the court would simply hold that the legislature had done no legislative act whatever, just as is held in cases where the legislative will is expressed in terms so vague as to convey no definite meaning. In such cases it is held that the court " may not allow conjectural interpretation to usurp the place of judicial exposition. There must be a competent and efficient expres-

sion of the legislative will." *State* v. *Partlow*, 91 North Car., 550. " Whether a statute be a public one or a private one, if the terms in which it is couched are so vague as to convey no definite meaning to those whose duty it is to execute it ministerially or judicially, it is necessarily inoperative. The law must remain as it was unless that which professes to change it be itself intelligible." *Drake* v. *Drake*, 4 Dev., 110.

But it is not true that under the construction which we have given to it the statute can have no operation, for it will operate as against all persons except the vendor and his heirs, as for example, in the case of the assigns of the vendor and the assigns of his heirs. At all events it will have some operation, and all that the legislature seems to have intended it to have, and this is enough in answer to the present objection.

The Court of Common Pleas is advised to render judgment for the plaintiff.

In this opinion the other judges concurred.