**UNITED STATES ex rel. PEPE v. JOHNSON, Commissioner of Immigration, et al.**

District Court, D. Connecticut. March 30, 1928.

No. 3240.

**1. Statutes ⬅181(1)—Court determines legislative intent only as expressed in language of statute.**

It is not the province of a court, construing a statute, to seek to determine the intention of the Legislature, except as such intention is expressed in the words of the statute itself.

**2. Aliens ⬅53—Alien, convicted and sentenced under information charging 11 different offenses of statutory arson in 11 separate counts, held not subject to deportation as having been sentenced more than once (8 USCA § 155).**

Alien, convicted and sentenced under one information charging him in 11 counts with 11 different offenses of statutory arson, *held* not subject to deportation under Act Feb. 5, 1917, § 19 (8 USCA § 155), relating to deportation of aliens "sentenced more than once to such a term of imprisonment, because of conviction in this country of any crime involving moral turpitude," since there was only one act of sentencing, though several sentences may have been imposed.

At Law. Application by Louis Pepe for writ of habeas corpus to test the validity of an order of deportation, opposed by John P. Johnson, Commissioner of Immigration, William M. Clark, Immigration Inspector, and others. Writ granted.

John M. Chapnick, of New Haven, Conn., for petitioner.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., opposed.

THOMAS, District Judge. Louis Pepe has been ordered deported, and he sues out this writ of habeas corpus to test the validity of the order of deportation.

By a stipulation entered into between counsel it is conceded that the petitioner entered this country from Italy on March 15, 1911, and that he is still an alien. The stipulation then recites that:

"(3) On July 14, 1925, said petitioner appeared in the superior court at New Haven county and was found guilty and sentenced on one information charging him with 11 different offences of statutory arson in 11 separate counts (Exhibit A) as having been committed on the following dates and in the following places:

First count..... Derby .... March 6, 1925.
Second count.... Derby .... January 19, 1925.
Third count..... Derby.... January 19, 1925.
Fourth count.... Derby .... January 19, 1925.
Fifth count..... Ansonia... December 31, 1924.
Sixth count..... Ansonia .. January 4, 1925.
Seventh count... Ansonia .. December 31, 1924.
Eighth count.... Ansonia .. December 31, 1924.
Ninth count..... Ansonia .. January 4, 1925.
Tenth count..... Ansonia .. January 4, 1925.
Eleventh count.. Derby..... March 6, 1925.

—and was then and there sentenced to be imprisoned in the Connecticut State Prison at Wethersfield as follows: First count, not less than two years nor more than three years; third count, one year; seventh count, one year; ninth count, one year, the sentence on the third count to take effect at the expiration of the sentence on the first count; sentence on the seventh count to take effect at the expiration of the sentence on the third count; and the sentence on the ninth count to take effect at the expiration of the sentence on the seventh count. Judgment was suspended on counts 2, 4, 8, 10, and 11, and counts 5 and 6 were withdrawn by the state's attorney."

It further appears that on July 14, 1925, there was issued by the clerk of the superior court a mittimus, directing the warden of the Connecticut State Prison to imprison the petitioner in accordance with the sentence imposed.

On February 28, 1927, a warrant of deportation was issued directing that the petitioner be deported to Italy on the ground "that he has been sentenced subsequent to May 1, 1917, to imprisonment more than once for a term of one year or more for the commission, subsequent to his entry, of a crime involving moral turpitude, to wit, statutory arson."

On February 1, 1928, at a meeting of the board of parole of the Connecticut State Prison, it was voted to parole the petitioner, effective immediately, on condition that he be deported; but, if for any reason deportation cannot be brought about, the parole is

not to stand and his case will again be considered by the board at a future date.

Pursuant to said warrant of deportation, the petitioner was taken into custody by the immigration inspector on September 27, 1927, and is now being held for such deportation.

It is the claim of the respondents that the petitioner is subject to deportation under the provisions of the Act of Congress of February 5, 1917, chapter 29, § 19, 39 Stat. 889 (8 USCA § 155), which reads:

"Except as hereinafter provided, any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, *or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry,* * * * shall upon the warrant of the Secretary of Labor, be taken into custody and deported. * * * In every case where any person is ordered deported from the United States under the provisions of this subchapter, or of any law or treaty, the decision of the Secretary of Labor shall be final."

It may be conceded at the outset that the crime or crimes for the commission of which the petitioner was sentenced involved moral turpitude. The sole question in the case is whether the petitioner was "sentenced more than once" within the intendment of the statute.

The petitioner strongly contends that, inasmuch as there was but one information, and inasmuch as the cumulative terms all merge into one term, the conclusion follows that Pepe has been sentenced but once.

Authorities have been cited by the petitioner to the effect that, when one is sentenced on several counts of a single information charging crime, he receives but one sentence. On the other hand, the respondents' claim, also supported by authority, is that under such circumstances the accused receives as many sentences as there are counts on which he is convicted. However, no authority has been cited by counsel, nor has the court been able to find any, construing this statute. The authorities cited depend on facts peculiar to each particular case and afford little aid in determining the question before the court.

For example, in United States v. Thompson (D. C.) 202 F. 346, cited by the petitioner, the defendant was convicted on two

counts, and was sentenced to serve one year on the first count and six months on the second count, to run consecutively, the time to be served in a United States penitentiary. On the petition for habeas corpus directed to the warden of the penitentiary, the petitioner claimed that, inasmuch as neither of the terms specified by the court was for more than one year, he could not be sentenced to serve his term in a penitentiary. The writ was dismissed, the court holding that the designation of separate periods under different counts of the same indictment, the second to commence coincident with the expiration of the first, did not constitute separate sentences, but a single sentence, made up of the aggregate period specified, and constituted but one punishment, evidenced by one and the same judgment, and that, inasmuch as the aggregate term was more than one year, the sentence to a penitentiary was valid. On the other hand, in Ebeling v. Biddle (C. C. A.) 291 F. 569, it was stated that, where the prisoner was sentenced on five counts, each sentence was a separate and distinct entity. These authorities are not necessarily in conflict, each case deciding the point therein raised.

[1] It is the respondents' claim that, there being no specific authority on the issue before the court, the purpose of the statute is to be considered in construing it. They further claim that the purpose of the statute is to provide for the deportation of undesirable aliens, and that, within the meaning of the statute, one who has been convicted of more than one crime involving moral turpitude is such an undesirable alien. However, if that were the purpose of this enactment, it would have been a simple matter for Congress to have so worded the statute that there would be no doubt on this point. It might well be argued that the law is designed to rid the country of such aliens, who, by the commission of a crime involving moral turpitude after having served a term in prison for the commission of another such crime, have demonstrated that they are not amenable to the corrective influence of prison service. Further, it is not the province of a court, in construing a statute, to seek to determine the intention of the Legislature, except as such intention is expressed in the words of the statute itself. The Supreme Court of Errors of Connecticut in State v. Faatz, 83 Conn. 300, 76 A. 295, speaking by Justice Robinson on page 302 (76 A. 296), in construing a penal statute, said:

"We are here dealing with a penal statute, not a remedial law, and as far back as

1821 this court held that penal statutes must be strictly construed, or, 'more correctly it may be said, that such laws are to be expounded strictly against an offender, and liberally in his favor. This can only be accomplished, by giving to them a literal construction, so far as they operate penally; or at most, by deducing the intention of the legislature from the words of the act. * * * In extension of the letter of the law, nothing may be assumed by implication; nor may the mischief *intended* to be prevented or redressed, as against the offender, be regarded in its construction.' * * * Daggett v. State, 4 Conn. 60, 63 [10 Am. Dec. 100]."

And on page 305 (76 A. 297) the learned court said:

"The statute is a benign one, and its purpose is good, and, if properly and legitimately enforced, it is a useful one; but it should not be strained by construction to include terms and restrictions not intended by the Legislature, as that intent is manifested by the language used. The question was not what the Legislature actually meant to say, but what is the meaning of what the Legislature has said. Lee Bros. Furniture Co. v. Cram, 63 Conn. 433, 438, 28 Atl. 540. If the Legislature intended to prohibit and punish the performing of any dental operation, it failed to express that intention in any way by which it can be known to the court. Such an intent is not to be found in the words employed in the act. 'A legislative intention, not expressed in some manner, has no legal existence. "We are not at liberty to speculate upon any supposed actual intention of the Legislature. We are not at liberty to imagine an intent and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting and remodeling with the view of making the letter express an intent which the statute in its native form does not express."' Lee Bros. Furniture Co. v. Cram, 63 Conn. 433, 438, 28 A. 540, 541."

[2] Although the matter is not free from doubt, it is my opinion that by the word "sentenced" is meant the performing of the act of sentencing, and that the term "sentenced more than once" means the performing of the act of sentencing more than once. In this case there was but one act of sentencing by the Connecticut superior court, although perhaps more than one sentence was imposed by the one act of sentencing, and therefore the petitioner is not subject to deportation under the terms of the act.

However much it may be argued that the petitioner is an undesirable, he is privileged to avail himself of the provisions of the statute, and to rely upon the wording of the statute and insist that, if Congress intended to cover such a case as his presents, it could easily have used language to express that intention with clearness and certainty, and to cover the case which is here presented by the facts set forth in the stipulation. In my opinion, the remedy is with Congress, and not with the courts. If we adopt the contention of the government, the court would be indulging, not in interpretation, but in judicial legislation.

I am therefore constrained to sustain the writ; and it is so ordered.