THOMAS McMANUS *v.* ALEXANDER JARVIS ET AL.[1]

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued December 7, 1938.

[1] This opinion was approved at a conference of the judges on January 5, 1939, but it was not released because the court was informed that the case had been settled. It has, however, come to the knowledge of a number of attorneys, and it therefore seems best to print it.

(707)

*Cyril Coleman,* with whom, on the brief, was *William S. Hyde,* for the appellants (defendants).

*Frank Covello,* for the appellee (plaintiff).

HINMAN, J. On September 17, 1936, the defendant Jarvis, hereinafter referred to as the defendant, was performing a contract with the state highway commissioner for the regrading and resurfacing of Wetherell Street, a town highway in Manchester, under the provisions of Chapter 79 of the General Statutes, Cum. Sup. 1935, popularly known as the "dirt roads act." There were posted at each end of the section of road under repair signs reading "Caution, road legally closed under Chapter 80, Section 1513, General Statutes 1930, pass at your own risk. State Highway Commissioner." No detours were provided and the street was being used by residents thereon and members of the general public. As the plaintiff was walking along this street he was struck and injured by a truck driven by the defendant Stone as, the plaintiff claimed, the servant and agent of Jarvis, and which, the plaintiff offered evidence to prove, was negligently backed up suddenly and without warning as he neared the rear end of it.

Section 1513 of the General Statutes provides that "the highway commissioner may close or restrict traffic over any section of any trunk line or state aid highway or bridge for the purpose of construction, reconstruction or repair by posting notices at each end of such section of highway or at each end of such bridge, and any person using such highway when such notices are

so posted shall do so at their own risk." It is included among the statutes which, by what is now § 516c, Cum. Sup. 1935, are made applicable to town highways being improved under state appropriation, as in this instance. The defendant requested a charge to the effect that if the road was posted in accordance with the statute (§ 1513) the risk of collision with one of the contractor's trucks was one assumed by persons using the posted highway "just as much as is the risk of a defect in the surface of the highway." The trial court charged, instead, that the only risk the plaintiff assumed was one of a defect in the highway itself and not that of being struck by the defendant's truck and that as to the latter "the ordinary rules of negligence apply." The first issue on appeal is the accuracy of this charge as to the extent of risk assumed by a traveler on a section of highway so posted.

Literally, the provision in the statute that persons using such highway "shall do so at their own risk" covers any hazard incurred by reason of the use, whether it be from a defect in the highway itself or from other cause, such as negligence as alleged here. In *Belhumuer* v. *Bristol*, 121 Conn. 475, 185 Atl. 421, we said (p. 478) that "for the convenience of the public, the statutes make provision by which the highway commissioner may still permit persons . . . to use the highway, without liability being incurred for injuries due to defects in it" and (p. 479) that "the risk which a traveler using a highway closed by the commissioner under the statute assumes is the risk of injury due to a defect in the highway, for which he would ordinarily be entitled to recover damages." However, as that case pertained to a defect in the highway, there was no occasion to consider or decide as to other risks and it is not conclusive as limiting the assumption to risks arising from such defects only.

Since, unless expressly authorized, no action at law lies against a state, originally the only recourse of a person incurring damage by reason of a defect in a highway which it was the duty of the highway commissioner to maintain was a claim against the state presented to the General Assembly. In 1915 an act was passed (Chapter 307) which was the same in substance as its lineal successor § 1481 of the General Statutes, 1930, providing for a civil action to recover damages for injury sustained "by means of defective road or bridge which it is the duty of the highway commissioner to keep in repair. . . ." The purpose was to afford, as an alternative to resort to the legislature, a right of recovery from the state, through the highway commissioner, in an action at law similar to that given by § 1420 of the General Statutes and its predecessors against municipal corporations for damages from defective highways. "A cause of action under either of these statutes is not really one to recover damages for an injury arising from negligence but for breach of a statutory duty." *Shirlock* v. *MacDonald*, 121 Conn. 611, 613, 186 Atl. 562; *Dunn* v. *MacDonald*, 110 Conn. 68, 77, 147 Atl. 26; *Porpora* v. *New Haven*, 119 Conn. 476, 479, 177 Atl. 531; *Bartram* v. *Sharon*, 71 Conn. 686, 43 Atl. 143. Section 1513 of the General Statutes, above quoted, and the one directly involved here, was originally passed as § 44 of Chapter 263 of the Public Acts of 1925, which included a revision and re-enactment of the prior statutes concerning state aid and trunk line highways including, as § 47, the present § 1481 of the General Statutes, 1930. Section 516c, Cum. Sup. 1935, merely made the statutory provisions concerning trunk line and state aid highways, including §§ 1481 and 1513, applicable also to town highways improved under the provisions of Chapter 79, Cum. Sup. 1935, with a

proviso (§ 518c) that the obligations under § 1481 shall be assumed by the towns which accept allocation of state funds under that chapter.

The foregoing legislative history may suggest that the purpose of § 44 (now § 1513) was to relieve the state, so far as concerned sections of highways under construction, reconstruction or repair, from liability, under § 47 (now § 1481) and its successors, for damage incurred by reason of defects in the highway only, and to the exclusion of other causes, such as negligence of a contractor under the commissioner. On the other hand, the consideration, advanced in *Belhumuer* v. *Bristol,* supra, 479, supporting extension to the contractor of the statutory immunity would apply equally to liability for causes other than highway defects. If immunity therefor is denied "either the State would be compelled to pay a higher price for the work because of the additional danger of liability which would rest upon the contractor due to the fact that the highway [was] being used and the additional precautions he would find it necessary to take, or the highway commissioner would in fact close highways under construction, reconstruction or repair thus denying to the public the convenience the statute is intended to serve." However, as the wording of the statute is plain we are not at liberty to speculate upon any supposed intention not expressed in an appropriate manner or to restrict the ordinary import of words used in order to effectuate such supposed intent but "which the statute in its native form does not express." *Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 Atl. 540, quoting *Alexander* v. *Worthington,* 5 Md. 485; *Comley, State's Attorney, ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 163, 174 Atl. 415. If the legislature intended to restrict the immunity to highway defects it could easily have expressed that intent quite clearly. *Lee Bros.*

*Furniture Co.* v. *Cram,* supra, 439. Therefore we are constrained to hold that the immunity under § 1513 extends to the negligence here involved, the defendant was entitled to the charge requested, in substance, and that given was incorrect.

The plaintiff alleged in his complaint that he is a steam fitter by trade and because of his injuries has been and will be permanently prevented from carrying on that trade and his earning capacity has been permanently impaired. Referring to this allegation, the court stated that "the plaintiff is entitled to recover damages for loss of earning capacity even though at the time of the injury he was not actually working" and that in computing damages, if awarded, the jury might allow the plaintiff for earnings lost up to time of trial "and for such earning capacity as he will lose in the future" but gave no instruction as to the ascertainment of damages for future loss of earning capacity, and the charge in that respect is claimed to have been inadequate. It was in evidence and undisputed that the plaintiff is five feet seven and one-half inches tall, weighed two hundred and twenty-five pounds, and was sixty-one years of age at the time of the trial and that his life expectancy according to mortality tables was 11.27 years. The defendants offered evidence that the steam fitting business is poor in spring and summer and that the plaintiff had no employment from March or April to the date of his injury. The plaintiff's evidence was that at the time of the accident he had a dormant hypertrophic arthritis and Paget's disease which he claimed were lighted up by his injuries, while the defendants claimed to have proved that when injured he was suffering from an advanced stage of arthritis and arteriosclerosis, x-rays showing that by reason of deposits of lime salts his arteries presented a medical picture of "pipe stem arteries," and from

Paget's disease, which is a lessening of the density of bone substance, and that, therefore, it could not reasonably be expected that he could continue during his life expectancy in the occupation of a steam fitter, which requires the lifting of heavy objects.

Where a plaintiff claims damages for future loss in capacity to earn, the probable duration of his life is an important element in determining the amount to be awarded, and resort to mortality tables is the accepted method of supplying this information. If, by request to charge or the production of evidence, either of the parties brings this element to the attention of the court, it is necessary that the jury be instructed to consider the probable length of time during which earnings would be realized. *Jackiewicz* v. *United Illuminating Co.*, 106 Conn. 302, 308, 138 Atl. 147. Not only should the probable length of life remaining to a plaintiff be taken into account but also "all the natural incidents of life, which in the normal process of existence might be expected to reduce the aggregate earning capacity. . . . Accident, sickness, disability, old age and the like, are such common incidents of life that they are to be expected in greater or less measure by all men, and certain of them especially by men in certain employments and environments. Any true estimate of what a given man may be expected to do in the future, especially in the way of earning, must take note of them. . . . This forecast, to be of value, must take into account all material factors." *Lane* v. *United Electric Light & Water Co.*, 90 Conn. 35, 39, 96 Atl. 155. Together with these general considerations above mentioned which are present in the average case, the effect upon future earning power of the specified physical condition of the plaintiff before the injury and the seasonal or intermittent nature of employment in his trade, as the jury might find the facts

to be, were important matters in assessing his damage for future loss of earnings. Although, where the jury was instructed to use their "best judgment and experience of human affairs" it has been held that, in the absence of request, the court was not required to charge specifically that they must take into account the probabilities of accident, sickness or other natural incidents of life, common to all mankind, as it may be assumed that the jury would not ignore then (*Mazziotte* v. *Bridgeport & Waterbury Passenger Service, Inc.*, 116 Conn. 32, 35, 163 Atl. 409), the jury in the present case were not instructed to resort to their own observation and experience as to such incidents and their potential effect upon earning power. It was also important that they be instructed to consider the probable consequences of the plaintiff's physical condition and the nature of his trade. The charge was insufficient to afford proper guidance in awarding damages for loss of future earning capacity and we are unable to say that the deficiency did not materially affect the amount of damages awarded.

The injection into argument by counsel for the plaintiff of a statement as to the compensation which the plaintiff would receive under the Workmen's Compensation Act for total permanent disability if his injuries had arisen out of and in the course of his employment was improper, but as a new trial must be ordered on the ground just considered and it is assumed that this argument will not be repeated on a retrial, it is unnecessary to decide whether or not it was effectively removed from consideration by the jury by the reference made to it in the charge.

There is error and a new trial is ordered.

In this opinion the other judges concurred.