WILFRED J. RODGERS ET AL. *v.* WILLIAM J. COX, HIGHWAY COMMISSIONER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued February 4—decided March 2, 1944.

*Louis Feinmark,* with whom was *Philip R. Shiff,* for the appellants (plaintiffs).

*William H. Tribou,* with whom, on the brief, was *Edward I. Taylor,* for the appellee (defendant).

DICKENSON, J. The trial court found that the plaintiffs suffered damages as a result of a defective highway maintained by the defendant which constituted a nuisance, but that the defendant was not liable because he had posted warning signs as provided by General Statutes, §1513, and the plaintiffs consequently had assumed the risk of injury in traveling over it. The plaintiffs have appealed, claiming that the posting was inadequate and that the sign would not give the defendant immunity as regards a defect in the highway not related to construction work.

The plaintiffs seek several additions to or corrections in the finding, but no material change may be made in it. Only two of the claims require specific mention. The court found that the sign was located so that it was within the line of vision of an approaching motorist and was partly illuminated by red lanterns. This finding is supported by evidence and inferences rea-

sonably deduced from it and cannot be disturbed. The plaintiffs claim an addition to the finding to the effect that the posting was solely for construction work and not for existing defects and that the plaintiff operator had no warning that the highway was closed or defective and did not assume the risk of injury. These are mixed statements of law and fact involving conflicting evidence. The court was not in error in failing to include them in the finding.

The facts are as follows: On November 14, 1940, at about 4:30 a. m. the plaintiff Rodgers was operating a tractor-trailer belonging to the other two plaintiffs northerly on a trunk-line highway in East Hartford. The tractor-trailer with its load weighed about twenty tons. It was raining, visibility was poor and the highway was wet and icy. Beginning a mile and a half south of the point of accident, this highway, known as Route No. 15, consisted of macadam roads running north and south separated by a parkway, each road being about twenty feet in width. About one-half of a mile farther north the two roads merged into one two-lane highway. This single road continued for about one mile, where the macadam surface ended. Seventy-five feet farther north was the southerly end of a four-lane concrete parkway. Connecting the macadam road with the concrete parkway was a stretch of oiled gravel road. On October 15, 1940, the defendant contracted for a southerly extension of the concrete parkway including the seventy-five-foot gravel stretch. Work was begun on this contract October 24, 1940, by clearing the ground beyond the shoulders and laying drains, and graders, bulldozers, steam shovels and other equipment had been brought on the job by the contractors for this purpose. It was agreed, however, between the defendant and the contractors that the surface of the existing macadam road

and gravel stretch should not be disturbed until the spring of 1941, and no work had been done on it at the time of the accident. Before the contractors began work, the defendant caused signs to be erected to close the road to traffic in conformity with General Statutes, § 1513, and these signs were in place at the time of the accident. They were eight feet square, painted white with black lettering, and read as follows: "Caution—1½ miles of construction work. This sign legally closes this road to traffic under Chapter 80 section 1513 General Statutes of 1930. Pass at your own risk. State Highway Commissioner." One of these signs was erected just south of the southerly end of the section to be reconstructed and is pictured in photographs in evidence. It was placed on the parkway, facing approaching traffic, within three or four feet of the traveled portion of the northbound lane, to the left of approaching vehicles which had to pass it to proceed over the section to be reconstructed. The plaintiff Rodgers, operating the tractor, which had a left-hand drive, approached and passed this sign. At the time, two lighted red lanterns were hanging one on each side of the signboard four or five feet from the ground and visible to operators of northbound traffic. Other than that cast by the lanterns, there was no illumination on the signboard. No evidence was offered as to the effect of automobile headlights in illuminating the sign.

The plaintiff operator passed the sign without seeing it or the red lanterns and continued northerly at a rate of speed of thirty miles an hour until he neared the gravel stretch, where several red lanterns were hung on the guardrail, when he reduced his speed to twenty miles an hour and continued. This stretch was and had been in a defective condition amounting to a nuisance owing to large holes, some as deep as eight

inches. These on the night in question were filled with and concealed by water so as to give the impression that the road was as level as the preceding road. By reason of the wheels of his tractor entering one of the holes, the operator lost control of it, and it veered and struck a tree on the east side of the highway, injuring the operator and damaging the vehicle.

The trial court found that the lanterns on the signboard, set as this was close to the road surface, were a reasonable warning to operators of the presence of the signboard, and reasonable care required them to ascertain the purpose for which the lanterns were shown before proceeding. It is also found that in failing to see the red lanterns the plaintiff operator failed to use reasonable care, and that their presence required him to ascertain, by stopping or otherwise, the warning on the signboard. The court concluded that the plaintiff's injuries were caused solely by the defective road, but that the presence of the signboard was "sufficiently brought to the attention of the traveling public which was using reasonable care," and that Rodgers had assumed the risk of injury.

General Statutes, § 1513, provides in part as follows: "The highway commissioner may close or restrict traffic over any section of any trunk line or state aid highway or bridge for the purpose of construction, reconstruction or repair by posting notices at each end of such section of highway or at each end of such bridge, and any person using such highway when such notices are so posted shall do so at their own risk." This statute permits the state, through the commissioner, to withdraw the part of the state highway system that is to be repaired or reconstructed from the operation of General Statutes, § 1481, which grants an action for damages suffered by reason of a defective highway. The primary purpose of the statute is to re-

lieve the state from liability. No cause of action lies against the state in the absence of a statute permitting it. Section 1481 permits such an action. Section 1513, if complied with, takes it away. *McManus* v. *Jarvis*, 128 Conn. 707, 710, 711, 22 Atl. (2d) 857. The posting may precede construction work for a reasonable period of time. Nor would the fact that a defective condition exists in the original highway not arising out of reconstruction or repair render § 1513 inapplicable. The danger to the traveling public may result from work done in the course of construction not directly affecting the traveled way; see *McManus* v. *Jarvis*, supra; and the commissioner is authorized to close a highway where the work is only preparatory to the reconstruction or repair of the part used for traffic. One who uses the road after it has been properly posted necessarily does so at the risk of any injury that may occur. *Belhumuer* v. *Bristol*, 121 Conn. 475, 479, 185 Atl. 421. It is undoubtedly in this sense that the trial court found Rodgers to have assumed the risk of injury. A highway so posted may be entirely safe for traffic at the time of posting. The posting, as we have stated, is not primarily a warning of danger but a notice that the state will not be answerable for injury occurring on it.

The question before the trial court was not whether the sign was adequate as a warning of a defective condition ahead but whether it gave sufficient notice of the fact that the state would no longer be responsible for injuries that might be received as a result of defective conditions. The conspicuousness of the sign may not be related to the degree of the danger in the road. The operator must be presumed to know the law and that the state in its constant duty to maintain a highway system may invoke this statute whenever it finds it necessary to reconstruct or repair a highway.

Reasonable warning of its intention to do so must be given, however, for otherwise the traveler has the right to assume, at least until the contrary is reasonably apparent, that the road is not defective. The statute contains no specific provision as to the character of the sign. Obviously those in the instant case were proper warnings in the day season. It is found that, on the night in question, "Other than that cast by the red lanterns, there was no illumination on the signboard." What illumination on the sign the lanterns furnished does not appear, but it may be assumed from the statement there was some. The court further found that reasonable care required the plaintiff operator "if the sign . . . was not capable of being read by him . . . to ascertain, by stopping or otherwise, what notice or warning was on the signboard." In the light of the other facts found we take the court's meaning to be this: The red lanterns sufficiently indicated the presence of a warning sign of some character and the reasonably prudent person would have slowed down or stopped if necessary to see what that warning was, and hence it was a sufficient posting under the statute. The question was one of fact and we may not say that the court's determination of it was so unreasonable as to constitute error.

There is no error.

In this opinion the other judges concurred.