**Louis DiMEO, Plaintiff-Appellee,**

v.

**The MINSTER MACHINE COMPANY, Inc., Defendant-Appellant.**

**No. 198, Docket 31742.**

United States Court of Appeals
Second Circuit.

Argued Nov. 27, 1967.

Decided Jan. 8, 1968.

Donald F. Keefe, New Haven, Conn., (Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn.), for defendant-appellant.

Kevin T. Gormley, New Haven, Conn., (Gormley & Gormley, New Haven, Conn.), for plaintiff-appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff was a stamping press operator who had a portion of his left hand severed when a power press manufactured by appellant recycled while he was removing a finished piece from the die. The press, which had been installed about six months before the accident, was operated by placing a part on the lower die of the press, under the ram, and raising both hands head-high to push dual buttons. The press would cycle once, the operator would remove the finished part and insert another and begin the sequence again.

The press should not recycle until the two buttons are again pushed and the operator's hands are nowhere within the working area of the machine. The parties agreed, and the jury found in a special verdict, that an operating valve malfunctioned causing a recycling while the operator's hands were still in the machine. The valve had been purchased by appellant from Ross Operating Valve Co., originally a codefendant in the suit against whom the action was dismissed for want of personal jurisdiction. Plaintiff's expert witness testified that, in his opinion, the valve failed because it had been assembled improperly and plaintiff's theory was that appellant had been negligent in failing to detect the defect before incorporating the valve into the press. Appellant claimed that the valve failed because plaintiff's employer neglected to maintain it properly, allowing water and dirt to get into it.

The trial was in the United States District Court of Connecticut on diversity of citizenship jurisdiction and Connecticut law is the applicable law. The jury found for the plaintiff in the amount of $40,000 damages.

On this appeal appellant argues that it was error for the trial judge to charge that the stamping press is a dangerous machine and, as such, requires the highest degree of care in its manufacture. The specific portion of the charge to which appellant objects is the following:

" * * * I charged you earlier that 'reasonable care' is care in proportion to the danger. Applying that principle here I charge you that those who manufacture power presses are required to exercise the closest attention, the highest competence and the most minute precautions in preparing them for the use for which they are intended."

Earlier in the charge, the judge had stated: "You will note under the definition of negligence I have just given you that 'reasonable care *under the circumstances*' is the test" (emphasis by the court). This charge is in conformity with well-settled Connecticut law. "Due care is care proportioned to any given situation, its surrounding peculiarities and hazards. It may and often does re-

quire extraordinary care." Tower v. Camp, 103 Conn. 41, 47, 130 A. 86 (1925).

■ Ordinarily the trial judge ought to leave to the jury the determination of what degree of care is called for under the particular circumstances of the case before it. In this case, however, there is no doubt of the extreme danger attendant on a defect in the construction or design of a power press. The elaborate precaution of requiring the simultaneous pressing of two buttons to activate the machine testifies to its manufacturer's awareness of the potential danger to the operator's hands and arms.

Although we are able to find no Connecticut authority directly on point, recent decisions expanding manufacturer's strict liability under the theory found in Section 402A of the Restatement (Second) of Torts (1964), suggest that the Connecticut courts would require that manufacturers of industrial machinery of this type be held to a high standard of care. See Rossignol v. Danbury School of Aeronautics, Inc., 154 Conn. 549, 227 A.2d 418 (1967); Garthwait v. Burgio, 153 Conn. 284, 216 A.2d 189 (1965).

Appellant also argues that it was error for the court to exclude from evidence a manual of the National Safety Council dealing with the care and operation of power presses. Recently some trial courts have been willing to allow a plaintiff to introduce safety manuals in order to show that the defendant's conduct did not measure up to generally accepted minimum standards of care used in the industry. Courts have been reluctant, however, to allow a defendant to use a safety manual to show that he has met the minimum standard, particularly where the industry has formulated the rules. See H. M. Philo, Use of Safety Standards, Codes and Practices in Tort Litigation, 41 Notre Dame Law. 1, 5 (1965).

■ Here, however, appellant did not intend to use the manual to prove that it had not been negligent in the manufacture of the press, but rather to show that plaintiff's employer did not follow a procedure that might have avoided the accident. Although it might have been proper to have admitted the manual into evidence, it does not appear that its exclusion in this case was prejudicial to appellant. Appellant was allowed to introduce another manual which contained essentially the same material. By its own admission, all that appellant lost was the "prestigious name and green cross symbol" of the National Safety Council.

As to appellant's other contentions:

■ The trial judge did not abuse his discretion in forbidding reference to workmen's compensation payments made by plaintiff's employer because of the danger of prejudice to the plaintiff. Kilarjian v. Horvath, 379 F.2d 547 (2d Cir. 1967); Stavola v. Palmer, 136 Conn. 670, 73 A.2d 831 (1950); Mickel v. New England Coal & Coke Co., 132 Conn. 671, 47 A.2d 187, 171 A.L.R. 1001 (1946); McManus v. Jarvis, 128 Conn. 707, 22 A.2d 857 (1942).

■ The testimony of plaintiff's expert witness contained a sufficiently formed opinion to support the verdict. It is the function of the expert witness in a case such as this to give his "educated guess" as to the cause of the accident. See McCormick, Evidence pp. 28–38 (1954 ed.). A reading of the testimony of plaintiff's expert witness shows that he thought the most probable cause of the defect was appellant's negligence.

■ Finally, there was sufficient evidence on the issues of negligent design and of negligent inspection to merit submission of both issues to the jury. There was testimony that an internal part of the valve was missing when it was examined after the accident and that appellant inspected only two percent of the valves it used on the presses. There was also evidence of the existence of a safer type of valve that would significantly reduce the chance of failure.

Judgment affirmed.