Donald Ray CONNER, Plaintiff,

v.

DAYTON ROGERS MANUFACTURING CO. and Liberty Mutual Insurance Co., Defendants.

No. 1681.

United States District Court, E. D. Kentucky, Covington Division.

June 17, 1974.

O'Hara, Ruberg & Cetrulo, Covington, Ky., for plaintiff.

G. Wayne Bridges, Covington, Ky., for Dayton Rogers.

William O. Bertelsman, Newport, Ky., for Liberty Mutual.

## MEMORANDUM

SWINFORD, District Judge.

This products liability action commenced pursuant to 28 U.S.C. § 1332 is founded upon the alleged failure of a "pneumatic die cushion" and supporting rods manufactured by Dayton Rogers and sold to the plaintiff's employer, Wadsworth Electric Company, Covington, Kentucky. The complaint named as defendants Dayton Rogers Manufacturing Company, a Minnesota corporation, and Liberty Mutual Insurance Company, an insurance carrier which had advanced the plaintiff sums of money under the Kentucky Workmen's Compensation Act, K.R.S. Chapter 342. Although the plaintiff's wife, Jean Conner, originally sued for the loss of companionship and services of her husband, that count of the action was dismissed by agreement of the plaintiffs.

The particular die cushion involved in the case at bar was purchased by Wadsworth for use in a large punch press designed to cut holes in metal; the cushion was not a functional part of the cutting process, but instead was intended to cushion the cyclic pounding of the press. Wadsworth installed the cushion by securing four mounting rods supplied by the defendant to a bolster plate on the press. On February 1, 1972, Conner was operating the machine from a seated position when he heard an explosion and discovered that his left foot which had been resting in an opening near the bottom of the press, had been partially severed. The issue addressed at the trial was whether a defect in the fabrication of the supporting rods was the cause of the accident. The plaintiff claims that improper machining caused the rods connecting the cushion to the bolster plate to fracture, while the defendant maintains that the blame is attributable to negligence on the part of the plaintiff and his employer.

The governing standard in the case at bar was enunciated by the Kentucky Court of Appeals in Dealers Transport Co. v. Battery Distributing Co., Ky., 402 S.W.2d 441, 446–447 (1965):

> "(W)e are persuaded to the view expressed in Section 402A of the American Law Institute's revised Restatement of the Law of Torts . . . :
>
> > '§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
> >
> > (1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> >
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without sub-

stantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller'."

See Annot., 13 A.L.R.3d 1057.

■ This court agrees with the evidence revealing that Dayton Rogers failed to satisfy the high standard of care imposed upon manufacturers of dangerous equipment. DiMeo v. Minster Machine Company, 2d Cir., 388 F.2d 18, 20 (1968). The evidence clearly indicated that although the design specifications for the supporting rods called for a strengthening "fillet" in the shoulder transition area, the members supplied with the cushion purchased by Wadsworth were poorly machined with a very abrupt shoulder transition. Although such defects might not cause a fracture under a constant load, the fluctuating pressure of the constantly recycling press imposed greater stress, "fatigue failure," and rupture. The attendant loss of support caused the heavy cushion to fall.

The plaintiff's evidence and legal arguments effectively countered the defense presentation. Noting the successful operation of 2,000 marketed air cushions, Dayton Rogers argued that responsibility for the incident was attributable to negligence on the part of the plaintiff and his employer: Wadsworth employees (1) neglected to read the instruction manual's directions for installing the cushion; (2) carelessly fitted and aligned the "die pins" used in producing a particular product; (3) used an inadequate air hose; and (4) failed to lubricate the cushion properly. It was further contended that Wadsworth and Conner negligently maintained and used as a foot rest the access openings near the bottom of the press.

■ The commendable safety record of other air cushions manufactured by the defendant does not rebut a claim that this particular unit was defectively crafted. Hessler v. Hillwood Manufacturing Company, 6th Cir., 302 F.2d 61, 63 (1962). The assertions of improper installation were countered by the testimony of the Wadsworth toolroom foreman that the cushion was installed according to Dayton Rogers specifications and periodically inspected for wear. The theory that the malfunction was caused by improperly aligned die pins was rebutted by testimony indicating that (1) the dies were carefully fitted to the press and aligned with pins of the proper size; (2) any misalignment would be revealed by a defective product and the fuse box lids produced by the plaintiff were of quality workmanship; (3) measurements revealing that the scoring on the rods was several inches long while the stroke of the press was only ⅝ inch indicated that the galling occurred as the result of the accident and was not attributable to careless die setting as posited by Dayton Rogers. Other testimony indicated that the use of an improper air hose could not cause a malfunction of the sort occurring herein; regardless of the hose size, the air pressure within the cushion itself was well within the safety limits published by Dayton Rogers. Cf. Speyer, Inc. v. Humble Oil and Refining Company, 3d Cir., 403 F.2d 766 (1968), cert. denied 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969).

■ Considerable effort was devoted to the theory that the accident resulted from the failure to lubricate the cushion as directed by the instruction manual. The statements by Wadsworth's plant superintendent and engineer that the cushion was greased biweekly was in apparent derogation of the daily lubrication dictated by the service manual. Metallurgists testified for the defendant that inadequate maintenance might cause scoring of the cushion cylinder and a consequent malfunction of the device; countering this position was proof suggesting satisfactory periodic maintenance.

Assuming inadequate greasing, however, it remains apparent that Dayton Rogers breached its duty to warn Wadsworth of the serious consequences of such an omission; the instruction manual supplied with the cushion merely advised that inadequate lubrication would result in dry seals and an attendant loss of pressure.

" 'Protection which is not reasonably co-extensive with the danger to which it is referable is, in effect, no protection. . . . (A) manufacturer's or seller's duty to warn of product danger is a duty to give a warning which is adequate and sufficient to the danger.'

\* \* \* \* \* \*

'It has been declared that the warning must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse.'

As an example, it may be doubted that a sign warning, 'Keep off the Grass,' could be deemed sufficient to apprise a reasonable person that the grass was infested with deadly snakes. . . . Or, a warning to 'Keep in a Cool Place' might not be sufficient if the result of nonobservance was a lethal explosion of the container." Post v. American Cleaning Equipment Corporation, Ky., 437 S.W.2d 516, 520 (1968), quoting Annot., 76 A.L.R.2d 37.

Although a manufacturer is not held to "that degree of clairvoyance which hindsight alone can give, . . . when injury is likely to be serious if trouble occurs, even slight foreseeability may warrant . . . ." Butler v. L. Sonneborn Sons, Inc., 2d Cir., 296 F.2d 623, 626 (1961). The defendant's notification that inadequate lubrication would impair the efficiency of operation is not sufficient to inform Wadsworth of the true risks of such misuse. See Powell v. E. W. Bliss Co., W.D.Mich., 346 F. Supp. 819, 822 (1972); Restatement, Second, Torts Section 402A, Comment n.

Similar reasoning rebuts the contention that the retention and use of the access holes constituted negligence on the part of Wadsworth and Conner. The mere retention and use of the opening is no defense "where the actual cause of the injury arises from an unanticipated defect in the product itself, and not from the careless act of the plaintiff." 63 Am.Jur.2d "Products Liability" Section 150. Dayton Rogers at no time warned of the "severity, gravity, and extent of the danger." Post v. American Cleaning Equipment Corporation, supra, 437 S.W. 2d at 520; Cf. Hercules Powder Company v. Hicks, Ky., 453 S.W.2d 583, 591 (1970); rather, the defendant's air cushions were expressly designed for installation in punch presses employing varying forms of protective covers. The retention of the archaic holes was a practice easily foreseeable by a manufacturer of equipment designed to replace other types of shock absorbing devices. See Elder v. Crawley Book Machinery Company, 3d Cir., 441 F.2d 771 (1971); Smith v. Hobart Manufacturing Company, 3d Cir., 302 F.2d 570 (1962); Powell v. E. W. Bliss Co., supra; Restatement, Second, Torts Section 402A, Comment n.

It is uncontested that Conner incurred medical bills of $3,189.64 and lost wages due to hospitalization totaling $1,836.80. The plaintiff in his memorandum seeks $45,000 in damages while the defendant contends that recovery should not exceed $10,000.

The only evidence suggesting an impairment of future earning power is the plaintiff's statement that he is unable to stand for the long periods necessary for certain types of work. However, a monetary valuation of this impairment must reflect the evidence revealing that Conner is currently earning more than he was at the time of his injury. The plaintiff stated in his deposition that he suffered no pain at the time of his hospital admission, and currently feels only slight discomfort. Buttressing this conclusion is the opinion by Dr. Johnson, the treating physician, that the injury will re-

quire no further medical attention and will result in an 8% bodily impairment. The only other intimation of future restrictions was Conner's complaint that he is no longer able to bowl, play softball, or dance with his former agility. His injury is nonetheless significant. He is a comparatively young man and must go through life with definitely impaired mobility. He has undoubtedly suffered physical pain and mental anguish. The court was impressed with the fact that he refused to exaggerate either his suffering or his handicap.

 Although the effects of the traumatic amputation will doubtless linger for a substantial period, the accompanying discomforts and occupational disability suggest that an award of $20,000.00 in addition to his special damages would properly compensate the plaintiff.

█ Defendant Liberty Mutual Insurance Company has filed a cross-claim alleging a right of subrogation against Dayton Rogers in the amount of $4,340.-28, representing its workmen's compensation payments to the plaintiff. K.R.S. 342.700(1) permits recovery by an insurance carrier of sums paid an employee injured through the negligence of a third person.

> "If compensation is awarded under this chapter, the . . . insurance carrier . . . having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employe from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employe, less the employe's legal fees and expense."

Although the parties have only peripherally addressed this issue, there seems little doubt that Liberty Mutual is entitled to recover the amounts it has heretofore paid the plaintiff. See Wallace v. Wathen, Ky., 476 S.W.2d 829, 830, note 1 (1972); Roberts v. United States Fidelity & Guaranty Co., Ky., 273 S.W.2d 39 (1954); T. W. Samuels Distillery Co. v. Houck, 296 Ky. 323, 328, 176 S.W.2d

890 (1943). The judgment will direct payment to the plaintiff, Donald Ray Conner, of $20,000.00 for the permanent impairment, pain, suffering and mental anguish, and in addition to this amount shall award him the sum of $23.64 for medical bills and the sum of $662.52 for loss of wages due to his injury.