49 F.3d 893
 VILLAGE OF SWANTON, Plaintiff-Appellee,
v.
18.9 ACRES OF LAND, MORE OR LESS, IN HIGHGATE, VERMONT; and
Unknown Owners, Defendants,
Donald Bessette, Frances M. Bessette, James H. Bessette, and
Rebecca A. Bessette, Defendants-Appellants.
 No. 1012, Docket 94-7780.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 14, 1995.
Decided March 8, 1995.
 
 A. Gregory Rainville, St. Albans, VT (Michael Rose, St. Albans, VT, of counsel) for defendants-appellants.
 Joseph E. Frank, Burlington, VT (Mark G. Hall, Paul, Frank & Collins, Inc., Burlington, VT, of counsel) for plaintiff-appellee.
 Before: OAKES, MINER and JACOBS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants-appellants appeal from a judgment entered on July 7, 1994 in the United States District Court for the District of Vermont (Parker, then-Chief Judge), following a bench trial, the district court having found that the plaintiff Town of Swanton (the "Town") was required to reimburse defendants $15,600 for the value of defendants' property that was condemned by the Town.
 
 
 2
 The Town operates a hydro-electric facility on the Missisquoi River, downstream from defendants' 287-acre tract of land. In order to accommodate the increase in water volume that would result from a raising of the Town's dam, the Town determined that it needed 18.9 acres of defendants' land along the river as well as 27 acres of residual title to the riverbed. Accordingly, the Town commenced this condemnation action under 16 U.S.C. Sec. 814, seeking to condemn the above-described land. The Town was granted judgment on the pleadings in regard to the issue of necessity, and that decision is not challenged in this appeal.
 
 
 3
 The parties do, however, dispute the value of defendants' condemned property. The district court conducted a two-day bench trial on whether the highest and best use of the property is agricultural or recreational. The court determined that the total value of the taking was $15,600 based on its conclusion that the highest and best use was agricultural, and ordered the Town to reimburse the defendants in that amount. On appeal, defendants challenge the district court's findings that "the proposed lots are generally not suitable for seasonal campsites" and that "[t]o the extent that there are lots that are suitable for development, they are located on the portion of [defendants'] property that will be on the riverfront after the taking, i.e., when the water level is raised, and will remain equally suitable for development."
 
 
 4
 "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). A finding of fact is not clearly erroneous unless "the reviewing court [considering] the entire [record] is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (internal quotations omitted).
 
 
 5
 At trial, each side put on expert witnesses in support of its theory of valuation. The Town's expert, an appraiser, testified that the area within the takings line consists of steep riverbank, ranging from thirty to forty feet high with a sixty percent grade, and flood plain. According to the expert, a portion of the property is located in a flood zone, and topography, location, soil, and drainage characteristics severely limit the land's development potential for seasonal campsites; no recreational development has ever been initiated on or near the property. Based on the physical characteristics of the property and the regional real estate market, the Town's expert determined that the best use of the 287-acre tract of land was agricultural. Moreover, the Town's expert testified that, because of the severe limitations on developing the property and the lack of an existing market, seasonal campsite development was not a reasonable use. The Town's expert also testified that the lots that contain suitable soil would remain in the defendants' possession after the taking.
 
 
 6
 The defendants put on two expert witnesses: a local civil engineer and an appraiser. The civil engineer testified that the land could be subdivided into at least twenty-nine lots. He believed that local zoning would permit the development of seasonal campsites and that bank financing would be available. As to environmental concerns that the soil percolation would prohibit the development of the shoreline, defendants' civil engineer opined that some of the land's soil would percolate adequately for development. In regard to the remainder of the land, he opined that remote septic systems in the soils adjacent to the potential lots were feasible and that such systems were common. The defendants' engineering expert also testified that the periodic raising and lowering of the river would turn the scenic shoreline into an unsightly shoreline of muck, tree stumps, and eroded riverbanks. Finally, defendants adduced expert testimony that replacing title to the riverbank with an easement would reduce the value of the existing land significantly.
 
 
 7
 The district court, as fact finder, had the opportunity to hear the testimony of the experts and was entitled to evaluate the proposed development of the land. Although the experts gave conflicting testimony, neither party's expert testimony was implausible. Thus, the district court considered both sides' evidence and made a reasonable determination as to the development potential for the land based primarily on the Town's evidence.
 
 
 8
 Defendants argue that their civil engineer's testimony that a remote septic system was feasible and commonly used was uncontradicted, because it was not directly rebutted by the Town's expert. However, the Town's expert testified that the characteristics of the soil severely limited the development potential of the subject tract. Cf. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 571 (2d Cir.1991) (findings of fact were clearly erroneous where they were contrary to the sole witness' testimony). Here, each party put on expert testimony and evidence in support of its theory of valuation. The court rejected the defendants' theory and determined that, because of the soil, the land was "generally not suitable for seasonal campsites as proposed by the defendant." This finding is not clearly erroneous.
 
 
 9
 Defendants contend that the court's finding regarding the suitability of the development of the remaining lots was clearly erroneous, because the riverbank would become severely damaged as a consequence of the increased water level. While defendants correctly note that an expert may make educated guesses, DiMeo v. Minster Machine Co., 388 F.2d 18, 20 (2d Cir.1968), and projections as to possible future events, Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 566 (2d Cir.1970), the fact finder need not accept the expert's position. Here, the court refused to accept the speculative testimony of defendants' civil engineer that the riverbank would be ruined by the raising and lowering of the water. On cross-examination, the expert acknowledged that the Town had studied the erosion issue and that the Federal Regulatory Energy Commission would not grant a license to the Town if there was a potential for significant erosion. The fact that the study was performed by an engineering firm employed by the Town bears only on the weight of the evidence.
 
 
 10
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 11
 ---------------
 
 
 
 * Judge Parker is now a member of the Second Circuit Court of Appeals.