WILLIAM H. COMLEY, STATE'S ATTORNEY, EX REL. LLOYD J. BROWN vs. JAMES D. LAWLOR ET ALS.

WILLIAM H. COMLEY, STATE'S ATTORNEY, EX REL. JOHN C. DWYER vs. JOHN CASEY ET ALS.

WILLIAM H. COMLEY, STATE'S ATTORNEY, EX REL. PATRICK O'BRIEN, JR., vs. THE BOARD OF TRUSTEES OF THE POLICEMEN'S RELIEF FUND ET ALS.

MALTBIE, C. J., HAINES, HINMAN, AVERY and PEASLEY, Js.

Argued June 13th—decided July 27th, 1934.

*John T. Cullinan,* with whom was *Albert L. Coles,* and, on the brief, *Harry Schwartz,* for the appellants (defendants).

*Philip Reich,* with whom, on the brief, was *Samuel Reich,* for the appellees (plaintiffs).

PEASLEY, J.   These three cases were briefed and argued together and as the major issue is the same in each, they will be discussed together.   The city of Bridgeport by its charter provides for the payment of pensions to retired members of its police and fire departments.   What construction should be placed upon the provisions of § 87 of the charter is the basis of the principal controversy in each of these cases.   The respondents in the Brown case constitute the board of trustees of the Firemen's Relief Fund and the respondents in the other two cases constitute the board of trustees of the Policemen's Relief Fund.   After amendment of § 87 of the charter in 1915, the relevant part of it reads as follows: "the board of police commissioners and the board of fire commissioners, respectively, shall have power to retire from their respective departments any policeman or police officer or any fireman or fire department officer, . . . who in the opinion of the board of commissioners, irrespective of age or term of service, has become permanently disabled for the performance of his duties by reason of mental or physical disability resulting from injury received or exposure endured in the performance of his duties. . . . Any policeman or police officer or

fireman or fire department officer so retired shall be entitled to receive from the pension fund provided in section 115 of an act revising the charter of the city of Bridgeport, approved August 1st, 1907, a yearly amount equal to one-half of the yearly compensation received by such policeman or police officer or fireman or fire department officer at the time of his retirement."

The General Assembly at its 1927 session amended the above quoted portion of § 87 of the charter by striking out the last paragraph thereof and inserting in lieu thereof the following: "Any policeman or police officer or fireman or fire department officer who shall have been retired since 1920 or who shall be retired because he has become permanently disabled as aforesaid, shall be entitled to receive from the pension fund provided for in section 115 of said act, approved August 1st, 1907, a yearly amount equal to two-thirds of the yearly compensation received or to be received by policemen, police officers, firemen or fire department officers of corresponding grade and rank. . . ."

The findings show that each of the relators had been severely injured prior to his retirement. Each was retired by his respective board after 1920. From the date when the 1927 amendment went into effect, each has been paid a lesser amount of pension than that provided in that amendment. Each had . paid his proper assessments to the fund from which his pension was paid.

The relator Brown petitioned his board for retirement on the ground of permanent disability. Dr. Curley, who is conceded to have been the official fire department surgeon, after examining Brown reported to the fire board that in his opinion Brown was suffering from chronic psycho-neurosis, with unfavorable out-

look, and expressed his belief that as Brown could not be expected to do fire duty again, retirement was the proper thing, and the board by its unanimous vote retired him from the department.

The relator Dwyer was a mounted policeman; while on duty on horseback he was thrown from his horse and suffered a fractured skull and brain injury. Police surgeon Adams reported to the board of police commissioners that Dwyer was physically unfit for duty, that his ailment was directly traceable to his injury, and recommended his retirement. The record of his retirement by the board shows that it was done pursuant to the provisions of § 87 of the charter, the vote reciting the § 87 grant of power in the board.

The relator O'Brien was a traffic patrolman. While so acting, in an attempt to stop a team of runaway horses, he was dragged about three hundred feet and rendered unconscious, and sustained injury to his sacro-iliac joint and his neck. After leaving the hospital he was removed to his home where he remained for about two years. As a result of his injury he was for a long time compelled to wear an iron brace extending from the base of his spine up his back, and on occasions still has to wear it. The board of police commissioners referred O'Brien to the board of police surgeons, who reported back that O'Brien was suffering from the effects of chronic sacro-iliac strain, with no apparent improvement and unanimously recommended his retirement. At the time of the trial of O'Brien's case there were no formal written minutes of meetings of the board of police commissioners available, but on the face of the board of police surgeon's report appears the endorsement, "Final Action. That recommendation be adopted and O'Brien be retired on half pay as of 6/15/28." On June 16th, 1928, John A. Lyddy, as clerk of the board of police commissioners,

without specific instructions from the board, but in accordance with his usual procedure in such matters, wrote to the city clerk of Bridgeport, the city comptroller and the city treasurer, advising that the recommendation to the board of police commissioners to retire O'Brien had been accepted and O'Brien retired.

The trial court reached the conclusion that each of the relators was retired by his respective board because in its opinion he had become permanently disabled for the performance of his duties by reason of mental or physical disability resulting from injury received or exposure endured in the performance of his duties. The appellants attack this conclusion of the trial court on the ground that the board, having the question of retirement before it, could not reasonably have formed the opinion necessary to retirement. They argue that "it is elemental that an opinion of a municipal commission, reached in good faith, is not an unvarying guarantee of intelligent thought or action," and contend that under the quoted charter provisions "it became possible for the respective commissions to reach an opinion in good faith, but with corresponding unintelligence. . . ." These contentions, unsupported by precedent, ignore the rule of law that where a special board of commissioners is created, it is to be presumed that it is competent for the task assigned. *Hunter's Appeal*, 71 Conn. 189, 197, 41 Atl. 557.

The claim is also pressed that nowhere in the minutes of the meetings of these retiring boards is there a recorded expression of a board opinion that any one of the relators was in fact permanently disabled within the purview of the charter. While this is true, it does not follow that the trial court, from the facts stated, could not reasonably have held that each of the boards was of such opinion. In Brown's case the board had before it a written petition for retirement based on

permanent disability. In that and the other two cases the record is clear that the reason for retirement was permanent disability. There were but two grounds upon which retirement could be made: one where there had been twenty-five years of service at sixty years of age; and the other for permanent disability; and as none of these relators had been in the service for twenty-five years, these boards, on each of these occasions, if they did their duty, must have been of the opinion that each of the relators was so permanently disabled. Had these boards not been of the opinion that the relators were permanently disabled, they could not legally have retired them, and here the rule of law applies that a presumption arises "from acts done, of what must have preceded it as matters of right or matters of duty." *West School District* v. *Merrills*, 12 Conn. 437, 440. Then, too, public officers are presumed to have done their duty until the contrary appears. *Hellman* v. *Karp*, 93 Conn. 317, 105 Atl. 678; *Atwater* v. *O'Reilly*, 81 Conn. 367, 71 Atl. 505. In *Schuster* v. *Johnson*, 107 Conn. 133, 135, 139 Atl. 502, perfected tax lists showed assessments of the sums stated in the certificates against certain property. The question was whether the property had been duly assessed. We said that the presumption that public officials, acting officially, had done their duty would apply, and would justify a finding that the taxes were duly assessed. The conclusion of the trial court that each of these boards was of the necessary opinion to warrant retirement was fully justified.

The two boards are administrative tribunals vested with the function of determining whether any particular police officer or fireman should be retired under the provisions of the charter. As such, their determination to retire any particular person is conclusive in the absence of proof that they acted arbitrarily,

illegally or so unreasonably as to have abused the discretion reposed in them. *Blake* v. *Board of Appeals,* 117 Conn. 527, 532, 169 Atl. 195; *Lazarevich* v. *Stoeckel,* 117 Conn. 260, 262, 167 Atl. 823. In order to entitle the plaintiffs to recover the amount of the retirement allowances fixed by the charter, the only burden resting upon them in these cases was to prove the fact that their retirement by one of the boards was for the cause of permanent disability specified in the charter and it was not incumbent upon them, as a part of their case, to prove that such a cause actually existed. The respondents alleged in their returns to the alternative writ that the boards acted under a mistake as to the right of each of the plaintiffs to be retired, that no cause specified in the charter in fact existed, and that they were misled by each of the plaintiffs into granting retirement when he was not entitled to it. But the findings fail wholly to afford any support for these allegations.

The trial court reached the conclusion that the 1927 amendment to § 87 of the charter fixed the pension of each of the relators at two-thirds, because the retirements were on account of a permanent disability, instead of one-half of the annual salary as it had theretofore been, and this conclusion is assigned as error. We are not aided in the determination of this issue by the provisions set out in the appellant's brief of the special act of 1899, wherein it was provided that the board could only retire for permanent disability after such disability was evidenced by a certificate signed by four physicians, and wherein it was provided that the board could restore one so retired to active membership. It is conceded that the 1915 amendment was a radical change in policy. It broadened the powers of the board having retirement for permanent disability under consideration by doing

away with the necessity of the medical certificate and placed the responsibility for retirement squarely upon the board, with no provision for return to active service.

The appellants contend that the 1927 General Assembly by its amendment intended to do away with the provision that retirement should depend upon the opinion of the board as to permanent disability. Had the General Assembly really had any such intention, it would without doubt have found words to express it. Certainly the 1927 amendment contained no appropriate language to express any such intention. The language used by the General Assembly in the 1927 amendment is plain and unambiguous, and no reasonable doubt can arise concerning its meaning. It is obvious that the intention of the General Assembly in the 1927 amendment was to change § 87 in but two respects: (a) To increase the amount of the pensions of those retired for permanent disability since 1920, and of those who thereafter would be retired because in the opinion of the board they shall have become permanently disabled for the performance of their duties by reason of mental or physical disability resulting from injury received or exposure endured in the performance of their duties, and (b) to provide an automatic raising or lowering of the amount of such pension by establishing it at a definite proportion to the amount received or to be received by those of corresponding rank or grade, instead of at a fixed sum determined as theretofore by the amount of salary at the time of retirement. Courts are not at liberty to speculate upon any supposed actual intention of the General Assembly. A legislative intention not expressed in some appropriate manner has no legal existence. *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 28 Atl. 540.

The conclusion of the trial court, that each of the relators should recover the difference in amount of pensions actually received and that which should have been received under the 1927 amendment, and that a peremptory writ should issue as prayed for, which the appellants have assigned as error, must be found, from what we said about the other conclusions, to have been properly reached by the trial court.

In the O'Brien case objection was made on the trial to the admission of the Lyddy letter, which purported to be a report of the board of police commissioners to the city clerk, the city comptroller and the city treasurer. The final ground of objection was that this board could not be bound by the informal written statements of its clerk. The objection at first was also on the ground that the offer was a copy and not the original letter. The court stated that the only flaw that it could see was that the copy was not the best evidence, and that the original letter was the best evidence. The objection that a copy and not the original was offered was then withdrawn and the court then admitted the copy, stating that the admission was with the understanding that no objection was being made on the ground that it was not the best evidence. By the charter the city treasurer is treasurer of the fund from which the retirement allowances are to be paid. It also provides that he shall pay bills and claims upon warrants drawn by the comptroller. 20 Special Laws, p. 148. It was necessary that these two officers should be authoritatively informed of the action of the boards and the person upon whom the duty to give them such information would naturally rest would be the clerk. This with the fact found by the court that the letter was sent in accordance with the customary procedure in such cases, requires a conclusion that the sending of the

letter was within the implied authority of the clerk. As the amount of the pension would depend upon the cause of retirement, the letter, if it was to perform its proper function, would have to inform the officers to whom it was sent of that cause. It therefore follows that the letter was admissible as a communication made by the clerk of the board within the scope of his implied powers.

The respondents assign as error several rulings of the trial court excluding testimony offered by them. In only one instance does the record indicate the basis upon which its admission was claimed and it there suggests that it was offered, not in support of the affirmative allegations of the return, but upon the theory of the respondents that the burden rested upon the plaintiffs to prove that they in fact were permanently disabled at the time of their retirement; and the exclusion of the testimony by the trial court was based upon the fact that no such burden rested upon the plaintiffs. This ruling was correct. In the absence of a showing upon the record that the other evidence excluded was offered for a different purpose, we cannot find error in the rulings of the trial court. We do not need, therefore, to consider whether, in such an action, a collateral attack upon the action of the boards in retiring the plaintiffs was permissible. See *Woodward* v. *State ex rel. Atkinson,* 187 Ind. 367, 370, 119 N. E. 482; 38 C. J. p. 923, § 684.

There is no error.

In this opinion the other judges concurred.