CLAUDIA ROCCHI ET AL. *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF GLASTONBURY ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 2—decided October 29, 1968

*Edward R. Smoragiewicz,* for the appellants (plaintiffs).

*Edward C. Wynne,* for the appellees (defendants).

THIM, J.  On February 24, 1966, the defendant town of Glastonbury applied to the defendant zoning board of appeals, hereinafter referred to as the board, for a special exception to locate a sanitary landfill operation on a portion of a fifty-five-acre tract of undeveloped land on which the town had an option to purchase.  Section 3.0.2 of the Glastonbury building zone regulations permits a special exception for a sanitary landfill disposal area when the board determines that the public welfare will be served and the appropriate use of neighboring property will not be substantially or permanently in-

jured.[1]  A public hearing was held on March 9, 1966, at which time the town officials encountered strenuous opposition to the sanitary landfill proposal from people who lived in the vicinity of the selected site. Following the hearing, the board denied the application on the ground that the properties immediately adjacent to the access road would be permanently and substantially injured.

The town submitted a second application on April 4, and a hearing was conducted on April 20. This second application was a modification of the first proposal, although it pertained to the same site. On May 3, the board concluded, in granting the special exception, that the sanitary landfill operation as modified by the second application would serve the public welfare and would not permanently or substantially injure the neighboring property. The plaintiffs, who are owners of property in proximity to the tract, appealed the decision to the Court of Common Pleas, which dismissed the appeal. From the judgment of the Court of Common Pleas, the plaintiffs have taken the present appeal.

The plaintiffs claim that the sanitary landfill operation will constitute a public nuisance. We are unable to agree with this contention. The record discloses that less than one-half of the more than fifty-acre site will be used for disposal purposes; the remainder of the tract will be open land and

---

[1] "[Glastonbury Bldg. Zone Regs. § 3.0.2 (1958 as amended).] MUNICIPAL REFUSE DISPOSAL AREAS—When in its judgment public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the Zoning Board of Appeals may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize a municipal refuse disposal area (including, without limiting the generality of the foregoing, plants for the processing of refuse) or sanitary landfill disposal area as special exceptions to the regulations herein established."

buffer space. No disposal operations will be carried
on within 850 feet of the New London Turnpike or
within 150 feet of a brook which flows through the
land. The sole access road is to be bordered with
evergreens and fencing for its full distance. The
operation is to be conducted in accordance with
standards and requirements specified by the state
health department and the water resources commis-
sion. No burning or scavenging will be permitted,
and the landfill area shall be open from 8:30 a.m.
to 4 p.m., Monday through Saturday. The town
proposes to surround the disposal area with trees
and plantings, which, in the opinion of the town
manager, would effectively screen it from any of the
neighboring residents. In addition, the zoning
regulations require that all refuse deposited during
each day be compacted and covered with six inches
of clean fill. Glastonbury Ordinances § 1396 (1962).
Upon complete utilization of a section, it is to be
covered with at least twenty-four inches of clean
fill and seeded to prevent water and wind erosion.
Id. §§ 1397, 1398.

We have recently held that a well-operated sani-
tary landfill disposal area does not constitute a
public nuisance. *Wood* v. *Wilton,* 156 Conn. 304,
310–12, 240 A.2d 904. The record in the case before
us discloses that the town will expend considerable
effort to mitigate many of the unsavory conditions
which are normally associated with a refuse disposal
area. Obviously, the compacting and covering of
refuse is calculated to reduce if not eliminate filth,
odors, rodent infestation and air pollution. The
sanitary landfill operation is a sensible solution to
the pressing social problem of refuse disposal, and,
when properly operated, it represents a vast im-
provement over the old-fashioned dump. The trial

court did not err in upholding the board's decision that this sanitary landfill disposal area, which is to be operated in accordance with the Glastonbury ordinances and state standards, will not constitute a public nuisance. Furthermore, we reject the plaintiffs' claim that the conditions which circumscribe the operation of the sanitary landfill proposal are so vague that they cannot be enforced.

The gravamen of the plaintiffs' appeal is that the court erred in concluding that the board did not act illegally, arbitrarily and in the abuse of its discretion in granting the special exception. The basic question before this court is whether the board's action is reasonably supported by evidence in the record. *George LaCava & Sons, Inc.* v. *Town Planning & Zoning Commission,* 154 Conn. 309, 311, 225 A.2d 198. The burden is on the plaintiffs to prove that the board has not acted fairly, with proper motives and upon valid reasons. We should be cautious about disturbing the decisions of the local board where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing. *Devaney* v. *Board of Zoning Appeals,* 143 Conn. 322, 325, 326, 122 A.2d 303.

It is unnecessary to summarize the testimony of the many witnesses who appeared before the board. It is sufficient to note that, although there was conflicting testimony about land values, water pollution, rodent infestation and related issues, the record discloses ample evidence to support the board's conclusion that the sanitary landfill operation would serve the general public and would not permanently or substantially injure neighboring property. The conclusions of the board are vindicated by the record and cannot be disturbed by us.

The plaintiffs further contest the court's judg-

ment on the ground that the board's action involved a reversal of its prior decision in the absence of a substantial change in circumstances. We have often said that a zoning board of appeals acts in an administrative capacity. *Florentine* v. *Darien,* 142 Conn. 415, 425, 115 A.2d 328; *Executive Television Corporation* v. *Zoning Board of Appeals,* 138 Conn. 452, 455, 85 A.2d 904. As a general rule, an administrative tribunal, such as a zoning board of appeals, is not permitted to reverse itself unless a change of circumstances intervenes which materially affects the merits of the case. *Sipperley* v. *Board of Appeals on Zoning,* 140 Conn. 164, 167, 98 A.2d 907. This requirement deters the exertion of improper influences and lends finality to the board's decisions. *Fiorilla* v. *Zoning Board of Appeals,* 144 Conn. 275, 279, 129 A.2d 619. Because of the nature of a special exception, the board can grant a second application which has been substantially changed in such a manner as to obviate the objections raised against the original application, as more fully explained in *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 534, 535, 102 A.2d 316. The board may grant the exception once it finds that all the requirements of the ordinance have been satisfied and that the applicant is willing to comply with any conditions which the board is empowered to impose. See *Abramson* v. *Zoning Board of Appeals,* 143 Conn. 211, 213, 120 A.2d 827.

In the instant case, the town originally proposed to locate the access road between two houses and within a fifty-foot radius of the property of the plaintiff Claudia Rocchi. The board denied the special exception because the properties immediately adjacent to the access road would be permanently and substantially injured. On the second

application, the town countered the ostensible objection to the first proposal by relocating the access road 350 feet from the nearest dwelling to traverse property owned by the metropolitan district commission (water bureau). The town also eliminated 1.3 acres of the disposal area which were most observable from the Rocchi property. We conclude that the board properly granted the second application when it determined that the modified proposal was substantially changed to comport with the requirements of § 3.0.2 of the building zone regulations.

The plaintiffs' claim that the granting of the special exception constituted spot zoning is not well founded. *Jeffery* v. *Planning & Zoning Board,* 155 Conn. 451, 462, 232 A.2d 497. A special exception does not involve a change of zone but rather a permitted use when certain conditions specified by the ordinance are met. See *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241.

We are unable to agree with the plaintiffs' claim that the situation of the sanitary landfill operation in the vicinity of their homes is unreasonable and constitutes a confiscatory taking. While § 3.0.2 of the building zone regulations would allow a sanitary landfill operation to be located in any zone, the record is replete with evidence to support the reasonableness of the selected site. Although presently in an undeveloped state, the site lies to the west of the New London Turnpike about 1200 feet north of Cold Brook Reservoir. The area proposed for refuse is bordered on the south and west by Roaring Brook. There is a fifty-foot rapid rise of the lower level of the disposal area to the upper level of the site, making it most suitable for a sanitary

landfill operation. Permitted uses in a rural, residential zone include agriculture, the killing and dressing of poultry, sawmills, dog kennels, golf courses, and commercial marinas and seaplane bases. See, generally, Glastonbury Bldg. Zone Regs. §§ 3.1—3.1.4 (1958 as amended).

We will not disturb the conclusion of the trial court that there was no confiscatory taking since there was expert testimony to the effect that the values of neighboring properties would not be adversely affected by the granting of the special exception. Even in the absence of this finding, losses occasioned to individual property owners which are incidental to measures taken for the promotion of the general welfare are not ordinarily sufficient to render the zoning regulations invalid. *Florentine* v. *Darien,* 142 Conn. 415, 423, 115 A.2d 328; *De Palma* v. *Town Plan Commission,* 123 Conn. 257, 267, 193 A. 868; *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294.

The plaintiffs' final contention is that the board's action involved an unconstitutional delegation of the legislative power of the zoning commission to an administrative agency. We are unable to agree with this claim. Section 8-2 of the General Statutes (Rev. to 1966) permits a zoning board of appeals to grant a special exception. We have upheld the delegation of legislative authority against constitutional challenge when the ordinance declares a legislative policy and establishes intelligible standards to which the agency must conform. *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 670, 103 A.2d 535. In the instant case, as a prerequisite to granting the special exception, the board must have determined that the public welfare and convenience would be substantially served and that the

appropriate use of neighboring property would not be substantially or permanently injured. These criteria are sufficient to pass constitutional muster. *Clark* v. *Town Council,* 145 Conn. 476, 483, 484, 144 A.2d 327.

There is no error.

In this opinion the other judges concurred.