## Balch Pontiac-Buick, Inc. *v.* Commissioner of Motor Vehicles

House, C. J., Shapiro, Loiselle, MacDonald and Bogdanski, Js.

Argued October 9—decided December 6, 1973

*John Gill,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, *Richard R. Brown* and *Stephen O'Neill,* assistant attorneys general, for the appellant (defendant).

*Albert Zakarian,* with whom, on the brief, was *J. Charles Mokriski,* for the appellee (plaintiff).

SHAPIRO, J. The defendant, the commissioner of motor vehicles, following a hearing held before a hearing officer of the department of motor vehicles, and as a result of reviewing the evidence therein produced, concluded that the plaintiff, Balch Pontiac-Buick, Inc., had violated § 14-64 of the General Statutes in that it made a false statement to a customer concerning the mileage on the motor vehicle which he had purchased from the plaintiff. The commissioner also concluded that there was no violation of § 14-145. As a result, all of the plaintiff's general distinguishing numbers, marks and any and all phases of operation at its location were ordered suspended for a period of three days. As prescribed by § 14-64,[1] the plaintiff was required to post a bond of $1000 in order to receive consideration for rein-

[1] "[General Statutes] Sec. 14-64. SUSPENSION AND REVOCATION. The commissioner shall suspend or revoke the license or licenses of any licensee when, after notice and hearing, it is determined that such licensee has violated any provision of this subdivision (D) or any other statute of this state pertaining to his business as a licensee. Any person who violates any provision of said sections or makes any false statement as to the condition of any motor vehicle sold, exchanged, transferred or repaired shall, in addition to suspension or revocation of license, be fined not less than twenty-five dollars nor more than one hundred dollars. After such finding or conviction and before reinstatement, the licensee shall furnish to the commissioner a bond satisfactory to him in the amount of one thousand dollars, conditioned upon compliance with all laws pertaining to the business of the licensee and the regulations of the commissioner, which bond may be forfeited for further violation and the claim arising therefrom shall be settled or compromised subject to the approval of the commissioner."

statement following the three-day suspension. The plaintiff appealed from the commissioner's decision to the Court of Common Pleas, where the appeal was sustained. From a judgment rendered thereon, the commissioner appealed to this court.

On December 10, 1971, the plaintiff was notified by the defendant to appear at a hearing and answer charges that § 14-145 was violated, and also that § 14-64 was violated in that "a false statement [was] made regarding the condition of a 1970 Chevrolet Kingswood, Id. #164360T196155 sold to David Ewbank, in that Balch Pontiac-Buick, Inc. stated that the mileage on the vehicle was approximately 16,600 miles when in fact it was 26,505 miles."

There was evidence presented at the hearing that disclosed the following: The MV-50 form showing "Date of purchase 7/8/71" and "Date of sale 7/8/71" marked "Original Certificate of Sale" and designated "State of New York Department of Motor Vehicles" indicates "J. L. Kafka, Inc., 1545 Jerome Ave., Bronx, N.Y." as the owner of a 1970 Chevrolet "serial or identification No. 164360T196155" and the purchaser as "Balch of East Windsor 67 Post Rd. Warehouse Point Conn." In a space captioned "Present Odometer Reading" was written "true mileage unknown 26,505." On July 9, 1971, a sale of this Chevrolet was reported through a "State of Connecticut Department of Motor Vehicles Form Q1," by Balch of East Windsor to it. On July 21, 1971, a sale of this Chevrolet to David Ewbank, the complainant, was reported through a similar Q1 form. In order to register the vehicle for the consumer the licensee was required to have MV-50 and Q1 forms. According to the MV-50 form on file with the plaintiff, at Kafka and the New York police, the

mileage at the time of the sale of the Chevrolet was 26,505 miles. On November 12, 1971, a Connecticut motor vehicle inspector received a notarized statement from Kafka, the prior owner of the Chevrolet, attesting to this fact. The Q1 forms pertaining to this vehicle were in the plaintiff's possession. At the time of sale, the purchaser Ewbank noticed the odometer as indicating that the vehicle had been driven approximately 16,500 miles. He discussed the mileage with the plaintiff's salesman and service manager, both of whom stated that it was accurate because it was illegal to set the mileage back. They did not show him the MV-50 form pertaining to the Chevrolet. He did not learn of the higher mileage until about a month later when he talked to an individual who had leased the vehicle from a leasing company and learned that when the lessee turned it in on approximately July 1, 1971, it had over 26,000 miles on it. Jody Balch, the plaintiff's vice-president, told Ewbank that they had the MV-50 form in their possession since the time they went to New York to buy the Chevrolet.

As a result of a review of the evidence produced at the motor vehicle department hearing, the commissioner found the following facts: On or about July 8, 1971, the plaintiff purchased the Chevrolet from J. L. Kafka, Inc., Bronx, New York. The state of New York department of motor vehicles form MV-50, dated July 8, 1971, indicated that the vehicle's mileage was 26,505, with true mileage unknown and that it was received by the plaintiff from Kafka. On July 21, 1971, the Chevrolet was sold to Ewbank by the plaintiff at which time it was represented to have original mileage of 16,505 as displayed on the odometer. The plaintiff had in its possession the

MV-50 form at the time of the sale to Ewbank showing mileage in excess of 26,000 miles. The plaintiff, in this case, as its standard selling procedure, had represented to the purchaser that the mileage shown on the odometer was the correct actual mileage. The plaintiff acquired the Chevrolet in a "true mileage unknown" transaction from New York and its agents and officers testified they knew from prior dealings that mileage is often changed in the New York transactions. The representations with respect to mileage were a substantial factor in the sale of the vehicle and a material fact in determining the value of the vehicle. The plaintiff had reason to know or suspect that the mileage was not the actual mileage at the time the representation was made to the buyer. From the foregoing, the commissioner concluded that the plaintiff violated the provisions of § 14-64 in that a false statement was made to Ewbank concerning the mileage of the vehicle purchased by him. The conclusion reached by the commissioner must be upheld if it is legally supported by the evidence which was presented before him. *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747; see *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353, 64 A.2d 330. It is not the function of the trial court, nor of this court, to retry the case. The commissioner's function is that of an administrative agency, although he acts in a quasi-judicial capacity. To render a decision, he must weigh evidence and reach conclusions. See *Dan M. Creed, Inc.* v. *Tynan,* 151 Conn. 677, 679, 202 A.2d 239; *Brookledge, Inc.* v. *Public Utilities Commission,* 145 Conn. 617, 619, 145 A.2d 590; *Conley* v. *Board of Education,* supra; *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537, 79 A.2d 350.

It is noted that in the plaintiff's appeal the claim was made that the commissioner failed to find that the plaintiff made a "false statement as to the condition of [said] motor vehicle" within the meaning of § 14-64. The commissioner has assigned error in the court's sustaining of the plaintiff's appeal from his finding, conclusions and order relative to the violations of § 14-64. The trial court in its memorandum of decision stated that "as to 'condition' the parties did not litigate or press this particular question within the meaning of Section 14-64." Nevertheless, we are confronted with the issue as to whether the court was correct in its determination that the commissioner acted illegally, arbitrarily and in abuse of his discretion in reaching the conclusion that the plaintiff violated § 14-64 in making a false statement to Ewbank concerning the mileage of the vehicle purchased by him.

" 'False' may mean untrue, or it may mean designedly untrue, implying an intention to deceive. When applied to the representations of one inducing an act to another's injury, it implies a purpose to deceive." *Sallies* v. *Johnson*, 85 Conn. 77, 82, 81 A. 974; see *Salt's Textile Mfg. Co.* v. *Ghent*, 107 Conn. 211, 215, 139 A. 694. The facts of the case bring it within the widely accepted rule that, although a vendor may, under the circumstances, have no duty to speak, nevertheless, if he does assume to speak he must make a full and fair disclosure as to the matters about which he assumes to speak. *Franchey* v. *Hannes*, 152 Conn. 372, 379, 207 A.2d 268. From the facts as found by the commissioner it is apparent that Ewbank was led to believe that he was purchasing an automobile that had gone only 16,505 miles. It was so represented to him on behalf of

the plaintiff. This was done in spite of information in the possession of the plaintiff that the mileage was in fact 26,505 miles. Thus, the purchaser was falsely and intentionally led to believe the words of the plaintiff's representatives that the odometer reading was accurate. The purpose was to deceive the buyer as to the state of the automobile in asserting its lower mileage as an attribute of the vehicle and as part of its essential quality.

The word "condition" as it appears in § 14-64 is to be construed according to the commonly approved usage of the language. General Statutes § 1-1; *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721. "Or, stated another way, statutory language is to be given its plain and ordinary meaning." *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. " 'Condition' means '[m]ode or state of being; state or situation; essential quality; property; attribute.' Black, Law Dictionary (4th Ed.)." *Fitzpatrick's, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 416, 420, 334 A.2d 476. We hold that the conclusion of the commissioner that the plaintiff violated the provisions of § 14-64 in that a false statement was made to the buyer concerning the mileage on the automobile purchased by him clearly relates to its condition and is fully supported by a permissible and reasonable view of the evidence before him.

The defendant assigns error in the conclusion reached by the court that in the motor vehicle department hearing the admission of the plaintiff's prior violations was substantial error; that the hearing officer acting in behalf of the defendant failed to maintain a posture of neutrality at the hearing;

and that the hearing, from its inception, was unfair and "violated fundamental concepts of due process and rational justice."

At the hearing, Jody Balch, the plaintiff's vice-president, and Claude Paradis, the plaintiff's general manager, were present, and they testified and participated in the proceedings. The record does not disclose that either Balch or Paradis objected to going on with the hearing without being represented by counsel. Nor does the record indicate that this was the first motor vehicle department experience in which the plaintiff was involved. On the contrary, the appendix discloses various warnings issued in the past to the plaintiff and at least two hearings held in regard to alleged statutory violations.

The plaintiff contends that it was entitled to a notice or warning that alleged prior violations would be introduced into the hearings and that it was not fairly apprised of the type of evidence to be considered. At the commencement of the motor vehicle department hearing, the hearing officer stated: "I will read into the record previous warnings and violations for Balch Pontiac-Buick, Inc." He then related a series of episodes by date and case number. The record fails to show that either Balch or Paradis objected nor is the claim made that they did object. In reviewing this aspect of the hearing, the trial court, stated that nine of these items consisted of alleged statutory violations while two involved warning letters; that none of the cases so recited led to suspension or license revocation, the matters having been resolved on the basis of warning letters. One complaint was withdrawn and the final marking on another recites "Matter resolved" without further action by the defendant. The court found

that the admission of the prior violations was wrongful and a substantial error which permeated the entire hearing, violated fundamental concepts of due process and natural justice, and of necessity became involved in the final decision of the commissioner, who, on review of the record, was confronted with the recital of the prior incidents.

General Statutes § 14-3, entitled "Powers and duties of commissioner," provides in part: "Said commissioner shall enforce the provisions of the statutes concerning motor vehicles . . . . Said commissioner shall keep a record of proceedings and orders pertaining to the matters under his jurisdiction and of all licenses and certificates granted, refused, suspended or revoked by him and of all reports sent to his office." From the language of the statute it is clear that the commissioner was required to keep a record of the previous warnings and violations as related to the plaintiff. Such a record would contain the very items which the hearing officer read into the record. It must be observed that in so doing, the hearing officer indicated nothing for the record as to his personal observation or judgment regarding his recital of those prior events. Following the hearing on January 12, 1972, there can be no doubt that by virtue of § 14-3 the commissioner already had available to him all of the information stated by the hearing officer, and in order to "enforce the provisions of the statutes concerning motor vehicles," and before imposing a suspension under § 14-64, he was not precluded from examining the plaintiff's past record kept by him. He may act upon facts which are known to him even though they are not produced at the hearing. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 349, 64 A.2d 330.

The record does not indicate that the commissioner considered as evidence of guilt the plaintiff's prior violations. To claim, as the plaintiff does and as found by the trial court, that the admission before the hearing officer of these prior violations permeated the entire hearing and of necessity became involved in the final decision of the commissioner is to attribute to him a failure properly to perform his duty. Public officials are presumed to have done their duty until the contrary appears. *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 59, 221 A.2d 589; *Comley ex rel. Brown* v. *Lawlor,* 119 Conn. 155, 161, 174 A. 415; *Schuster* v. *Johnson,* 107 Conn. 133, 135, 139 A. 502. Furthermore, the situation which confronted the plaintiff at the hearing was similar to that of a party at a trial. This court has repeatedly indicated its disfavor with the failure of a party, whether because of a mistake of law, inattention or design, to object to claimed errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, to assign such errors as grounds of appeal. *State* v. *Grimes,* 154 Conn. 314, 323, 228 A.2d 141. Similarly, in the present case, the plaintiff made no protest or objection.

It is stipulated by the parties that as of the day of the hearing the department of motor vehicles had not adopted and promulgated rules of practice and procedure for the hearings pertaining to suspension or revocation of dealer's licenses. The claim is made that this deprived the plaintiff of a fair hearing. Sections 4-41 to 4-50 of the General Statutes make provision for the adoption of regulations for state agencies. Section 4-41 defines "regulation" as "designed to implement, interpret or prescribe law or

to establish the general policy of such department or agency." We find nothing in the statutes nor has the plaintiff pointed to any requirement that makes it mandatory, however, that such regulations be adopted by the motor vehicle department relative to hearings on suspension or revocation of dealers' licenses. The only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice. That is, there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the commissioner is to act. See *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 212–13, 257 A.2d 795; *Conley* v. *Board of Education,* 143 Conn. 488, 495, 123 A.2d 747; 2 Am. Jur. 2d 234, Administrative Law, § 424.

While the court concluded that the hearing was unfair and not impartial, a review of the proceedings before the hearing officer shows clearly that no objection was raised to any of the evidence produced at the hearing. The plaintiff argues that the hearing officer had the duty to advise the plaintiff of a constitutional right to be represented by counsel at the hearing. We can find no basis for this claim. The short answer is that the plaintiff, an automobile dealer having had prior experience with the motor vehicle department regarding hearings, could have been represented by counsel but obviously chose not to do so.

The plaintiff also claims that its right to a fair hearing was further prejudiced when the hearing examiner admitted hearsay evidence wherein Ew-

bank testified about a telephone conversation regarding the mileage on the Chevrolet when it was turned in to the leasing company and in the admission of the notarized statement from Kafka. The general rule is that administrative tribunals are not bound by the strict or technical rules of evidence. *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 546, 102 A.2d 366; *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 536, 102 A.2d 316; *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 540, 79 A.2d 350; 29 Am. Jur. 2d 39, Evidence, § 5. Nevertheless, the plaintiff through its vice-president or manager had ample opportunity to object to the admission of any hearsay evidence. Under the circumstances, the hearing examiner was entitled to accept the statements in lieu of sworn testimony and the commissioner could give them such credence and weight as, in his mind, they merited. See *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 293, 99 A.2d 149.

The burden of proving that the commissioner acted arbitrarily, illegally or in abuse of his discretion was on the plaintiff. *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 74, 282 A.2d 900; *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 110, 248 A.2d 922. The record fails to show that this burden was sustained and the court was in error in so finding.

There is error, the judgment is set aside and the case is remanded with direction to render judgment dismissing the appeal.

In this opinion HOUSE, C. J., and MACDONALD, J., concurred.

Loiselle, J. (dissenting). The majority opinion states that although a hearing before the motor vehicle commissioner need not follow any particular rule of practice or procedure, it is required that the conduct of the hearing shall not violate the fundamentals of natural justice. I cannot agree with the majority that the conduct of the hearing in this case followed that principle.

The record discloses that at the beginning of the hearing the hearing officer read into the record eleven previous charges of statutory violations against the plaintiff and the disposition of each. The record is silent as to any objection by the plaintiff. This omission, however, does not result in a waiver, since this was not a case of failure to object to testimony introduced by a party to the trial or hearing. The procedure in this instance had the hearing officer himself read in prior convictions, not as testimony by anyone but as a preliminary step prior to, and independent of, the taking of testimony. As the error assigned does not go to admissibility of evidence but to a procedure which is claimed to be highly prejudicial, the failure to object is not fatal under these circumstances to a review by this court. Why such prior violations were read into the record of the hearing is unknown. I agree that the record does support facts found by the commissioner as stated in the majority opinion. The record, however, would also support facts which indicate that when the plaintiff's manager bought the vehicle from its vendor in New York, the odometer registered 16,505 miles and that the vendor, who later gave an affidavit that the mileage actually was 26,505, accepted a check for the vehicle at the time of purchase which stated on its face the figure of

16,505. Further, at the time the vehicle was purchased in New York, the MV-50 form was not received and it takes up to a month for it to reach the purchaser.

I do not claim that the commissioner should have believed the evidence presented by the plaintiff, but I firmly believe that the credibility of the witnesses of the plaintiff could have been materially affected by the fact that the record showed he was an eleventime "loser." Proceedings before administrative agencies are necessarily informal, but hearings are required to be conducted so as not to violate the fundamentals of natural justice. *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 292–93, 99 A.2d 149; see *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 8–10, 68 A.2d 152.

I am confused by the statement in the majority opinion that it is assumed that a commissioner will "perform his duty." This dissent is not meant to be interpreted as a reflection on the integrity of administrative officers. I do not claim that the commissioner acted improperly, but that the initial procedure which includes the prior alleged violations in the record used for determination of guilt is itself violative of due process.

"In determining the issues concerning the revocation or suspension of a dealer's license, the commissioner acts in a quasi-judicial capacity." *Dan M. Creed, Inc.* v. *Tynan,* 151 Conn. 677, 679, 202 A.2d 239. The fact that the commissioner does have in his office or at his disposal a record of prior violations does not give him the right to consider such violations in determining whether a licensee has violated a statute any more than a judge, prior to a trial, may go to the clerk's office to determine

whether an accused has a prior conviction record. Such prior violations may be considered in determining the severity of sanctions after a finding of guilty but, I maintain, should not be considered in determining whether there is guilt. It must be noted, however, that we are not concerned with evidence of a past record of crimes for which the maximum penalty may be more than one year in prison where, by virtue of General Statutes § 52-145 and *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341, such record may be used to attack the credibility of a witness. No citation need be given to support the fact that a record of prior offenses can have a prejudicial effect on the credibility of a witness. We see this in court every day. I see no difference in effect between the evidence revealing prior crimes in the trial of a person charged with crime and a procedure where prior violations of regulatory statutes are read into the record of a hearing on the violation in the same area. This is especially so when the statute in question is penal in nature and where, in addition to suspension and revocation of a license, a fine may be imposed. As was stated in *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90: "Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. . . . This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'" This principle would apply whether the sanction was a revocation or a suspension.

574

If the legislature does give administrative bodies quasi-judicial powers to determine whether there is a violation of a statute which is penal in nature, then the administrative bodies in accepting these powers have the duty to follow procedures which insure a fair hearing without prejudice to a person charged with the violation of such a statute.

In this dissenting opinion BOGDANSKI, J., concurred.