[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This proceeding arises out of a denial of a permit to develop a subdivision in an inland-wetland.
From a review of the record, the following factual picture is presented: The plaintiffs, Sedigheh Norooz and Pouram Aleali (hereinafter the Owners) are the owners of thirty-one and thirty-eighth (31.38) acres of undeveloped property located in the Town of Woodbury. Access to the subject property is by way of a fifty foot right of way from Churchill Road.
The owners desire to subdivide the property into eight lots suitable for single home residential development. However, the development necessitates the construction of approximately nine hundred (900) feet of roadway. In the process of said construction, one non-contiguous wetland would be filled in, portions of the road would be located within one hundred foot setback from existing wetlands, and two driveways would be placed over a water course to service two of the proposed subdivision lots.
The defendant, Woodbury Inland Wetlands Agency (hereinafter the Agency), is the duly designated Woodbury Agency entrusted with the enforcement of the Inland Wetlands and Water Courses Act General Statutes Sections 22a-28 to 22a-45. In order to proceed with the proposed subdivision, it was necessary for the owners to obtain a permit from the Agency, among other things, to locate the road near the wetlands, to fill in a portion of the wetlands, and to place driveways over a water course.
Accordingly, March 7, 1989 the owners filed an application with the Agency seeking a permit to perform the aforementioned construction that would impact on the inland-wetlands. The owners had filed three previous applications involving the subject property with the Agency since April, 1988. Two of the CT Page 2649 applications were withdrawn and the third application was denied.
Thereafter the Agency set the matter down for public hearings and public hearings were held on January 8, 1990, January 22, 1990 and February 13, 1990 respectively. At the January 8, 1990 hearing, counsel for the owners submitted the following three letters from land use experts, 1) Northeast Soils, Inc. by Bruce C. Lasky, Soil Scientist to Environmental Planning Services of New Hartford, Connecticut dated November 30, 1989, 2) Environmental Planning Services of New Hartford Connecticut to Mr. Torres of Torres Engineering by Michael Klein dated January, 1990, 3) Environmental Planning Services to the owners by Michael Klein dated January 3, 1990. At this hearing, Mr. Ozzie Torres from Torres Engineering appeared and testified as an expert witness. At this time, The plans that were submitted were somewhat different from plans that had been submitted with the prior applications. Some of the changes were that the detention basin was moved outside the stream bed located on the property, the plans expanded upon the roadways and the swail, the plans expanded upon the sequence of construction and discharge of the sediment basin, two driveway crossings at Lot 7 and at Lot 8 only one of which would be used so as to reduce the number of driveways crossing the wetlands. The plans did not change the proposed roadway across the wetlands but the plans offered a better wetland species of plants in the area. Due to the fact that there were changes in the plans, the Agency continued the public hearing to January 22, 1990 so that Mr. Robert Oley of Land Tech Consultants, the Town Engineers, could review and comment on the new plans and calculations.
At the hearing on January 22, 1990, it was determined that the Agency had not received a response from Mr. Robert Oley seeking his comments upon the plans and calculations. During the course of this hearing, concern was raised about water draining from an adjacent property causing a gully to wash down sediment. As to whether this problem was an erosion problem or a problem involving the wetlands, neither the Agency nor the owners had addressed this issue. The public hearing was then continued to February 13, 1990 so that the owners could have a water design developed and to give Mr. Robert Oley time to review the revisions.
At the February 13, 1990 meeting, the owners submitted a letter by Torres Engineering which was in response to comments received by the agency from Land Tech Engineering. In addition, the owners submitted their revised drainage calculations dated February 13, 1990 and revised plans dated February 13, 1990. The revised plans and calculations were offered by the owners in an attempt to resolve all the problems that had been raised by the Agency and its experts. CT Page 2650
Because new plans and calculations were presented at the hearing, the Agency determined that the matter would be tabled until this information was forwarded to Land Tech Engineering for review and comment. No further public hearings were scheduled by the Agency and no particular date was set by the Agency at this time to discuss and decide the merits of the application. The Agency next discussed the application at their meeting on February 26, 1990. At this time, the Agency disclosed that they had received a communication from Land Tech Engineering dated February 23, 1990 wherein it discussed the impact of the subdivision on the wetlands. The application was continued until the Agency's meeting of March 12, 1990 so that this new information could be received. At this meeting, the Agency planned to have a final vote on the merits of the application without holding any further public hearings or requesting comments from the owners to Land Tech Engineering's comments dated February 23, 1990.
At the Agency's March 12, 1990 meeting, the Agency voted to deny the application for an inland-wetlands permit to construct the subdivision. In its deliberations, the Agency used the Land Tech Engineering information supplied to them in its letter to the Agency dated February 23, 1990 as a basis from the denial of the application. The Agency denied the application for the following reasons:
 1. Section 6.1.e.i — the proposed activity — the construction of two hundred linear feet of roadway within a wetland, and two driveways will lead to the degradation of surface water and water quality by alterations in the subsurface flows within wetlands resulting from the damming effect of driveway and road construction (Town engineer's letter of 2/23/90).
 2. Section 6.1.e.i — the proposed activity will reduce the wetland and watercourse quality from the accumulation of deicing sands. The application includes a plunge pool, but it's capacity cannot be determined from the detail provided. (Town engineer's letter of 2/23/90).
 3. Section 6.1.e.i. — The proposed construction of the detention facility has the potential for the discharge of significant quantities of sediment into CT Page 2651 the wetland and watercourse. The application does not propose a mitigation strategy including errosion controls and construction sequencing. (Town engineer's letters of 2/23/90, 1/26/90 and 11/29/90).
 4. Section 6.1.e.i. — The proposed activity which includes the construction of the roadway and driveways within the wetlands fails to adequately control the discharge of sediment on the site. The plan indicated sediment barriers at the top of slopes rather than at the base, and proposed fill sections within the wetlands with no filter barriers shown.
 5. Section 6.1.e.i — 6.1.e.vii. — The alternative to wetlands disturbance for the construction of driveways to lots 7 and 8 has not been addressed by the applicant.
The following was placed in the Agency's minutes in connection with the denial of the application:
 Reason for denial by all four members: The Agency felt that the consulting engineer (LandTech Consultants, Inc.) had addressed a number of concerns throughout the review period, and that the applicant hadn't adequately satisfied and addressed these concerns.
Thereafter the owners properly appealed the Agency's decision.
The owners bear the burden of proving that they are aggrieved by the Agency's decision.
 "`"`The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, `the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must CT Page 2652 successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' . . ."' Cannavo Enterprises, Inc. v. Burns, 194 Conn. 43, 47, 478 A.2d 601 (1984); Bakelaar v. West Haven, 193 Conn. 59, 65, 475 A.2d 283 (1984). `Aggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." O'Leary v. Mcguinness, 140 Conn. 80, 83, 98 A.2d 660 (1953).' Hall v. Planning Commission, 181 Conn. 442, 445, 435 A.2d 975 (1980). State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300, 524 A.2d 636 (1987). A person does not become aggrieved, however, until the agency has acted. Hall v. Planning Commission, supra, 444.
Huck v. Inland Wetlands and Watercourse Agency, 203 Conn. 525, 530
(1987).
The owners purchased the property in September 1986 and have held title to the property since that time. Ownership establishes "a specific personal and legal interest in the subject matter of the decision". The agency's decision resulted in the denial by the owners of the ability to use this property as proposed establishes that "this specific personal and legal interest has been specially and injuriously affected." Accordingly, the owners are aggrieved by the decision of the Agency; and they are entitled to maintain this appeal.
At the outset it must be determined whether the Agency decided the application on the record presented to it; or whether its decision was based on information outside the record.
 Hearings before administrative agencies, such as this agency, although informal and conducted without regard to the strict rules of evidence, "must be conducted so as not to violate the fundamental rules of natural justice. Connecticut Fund for the Environment, Inc., v. Stamford, 192 Conn. 247, 249, 470 A.2d 1214 (1984); see Pizzola v. Planning Zoning Commission, 167 Conn. 202, 207, 355 A.2d 21 (1974). "Due CT Page 2653 process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the factors on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." Connecticut Fund for the Environment, Inc. v. Stamford, supra; see Welch v. Zoning Board of Appeals, 158 Conn. 208, 212-13, 257 A.2d 795 (1969).
Huck v. Inlands Wetlands Watercourses Agency, 203 Conn. 525, 536
(1987).
 Because public officers, acting in their official capacities, are presumed, until the contrary appears, to have acted legally and properly; Brookfield v. Candlewood Shores Estates, Inc., 201 Conn. 1, 7, 513 A.2d 1218 (1986); Balch Pontiac-Buick, Inc. v. Commissioner of Motor Vehicles, 165 Conn. 559, 568, 345 A.2d 520 (1973); Hills v. Zoning Commission, 139 Conn. 603, 608, 96 A.2d 212 (1953); the burden on such a claim rests upon the person asserting it. See, e.g., Obeda v. Board of Selectmen, supra; Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980).
Huck v. Inlands Wetlands Watercourses Agency, supra 537.
 The inclusion of improper evidence in the record upon which the decision is based does not, however, by itself, invalidate the decision. Madow v. Muzio, 176 Conn. 374, 382, 407 A.2d 997
(1978); Lawrence v. Kozlowski, 171 Conn. 705, 714, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). See Market Street Ry. Co. v. Railroad Commission, 324 U.S. 548, 561-62, 65 S.Ct. 770, 89 L.Ed. 1171 (1945); Marathon Oil Co. v. Environmental Protection Agency, 564 F.2d 1253, 1265 (9th Cir. 1977); Appeal of Nationwide Ins. Co., 120 N.H. 90, CT Page 2654 411 A.2d 1107 (1980). But the use of improper evidence requires a remand only if a party has affirmatively shown substantial prejudice. Madow v. Muzio, supra; Lawrence v. Kozlowski, supra, 713-14; see United States v. Pierce Auto Freight Lines, 327 U.S. 515, 528-30, 66 S.Ct. 687, 90 L.Ed. 821 (1946); N.L.R.B., v. Johnson, 310 F.2d 550, 552
(6th Cir. 1962); Pennsylvania R. Co. v. Department of Public Utilities, 14 N.J. 411, 428-30, 102 A.2d 618 (1954).
 Reliance on extra record evidence for important facts demonstrates substantial prejudice . . . Seacoast Anti-Pollution League v. Costle, supra, 881 n. 19.
 ("Before an administrative agency may lawfully rely on material nonrecord facts within its special knowledge and experience or which it has learned through investigation, it must allow a party adversely affected thereby an opportunity to rebut at an appropriate stage in the proceedings. Feinson v. Conservation Commission, 180 Conn. 421, 428-429, 429 A.2d 910 (1980); Parsons v. Board of Zoning Appeals, 140 Conn. 290, 292-93, 99 A.2d 149 (1953); Carroll v. Public Utilities Commission, 25 Conn. Sup. 459, 461-62, 207 A.2d 278 (1964).")
Connecticut Mutual Gas Corporation v. PUCA, 183 Conn. 128, 139
(1981).
 Nevertheless, although the [Agency] stipulated that it considered the report during the [_____] process, a reviewing court must assume, unless the contrary appears from the record, that the [_____] final decision did not rely upon whatever extra-record evidence the report may contain. Balch Pontiac-Buick, Inc. v. Commissioner of Motor Vehicles, 165 Conn. 559, 568, 345 A.2d 520 (1973).
Connecticut Natural Gas Corporation v. PUCA supra, 139. CT Page 2655
It is clear from the record that the Agency used important facts from the Land Tech Engineering report of February 23, 1990 in reaching its decision. In giving its reasons for the denial, the Agency concluded that the concerns set forth by Land Tech Engineering had not been addressed and satisfied. Thus any presumption that the Agency's decision was not based on materials outside the record has disappeared. The only conclusion that can be reached is that the Agency's reasons for the denial of the permit was based upon "extra record evidence"; and therefore that decision cannot stand and must be set aside.
Thus the next question to be resolved is what is the proper procedure to be used to resolve the Agency's inappropriate procedural conduct.
 The applicable provisions of General Statutes [_____] permit the trial court to "affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the [agency's] decision. . . ." when agency action is overturned, as here, because of invalid [_____] findings, we have held that a court must ordinarily remand the matter under consideration to the agency for further consideration. Hartford v. Hartford Electric Light Co., 172 Conn. 71, 73, 372 A.2d 131 (1976); Bogue v. Zoning Board of Appeals, 165 Conn. 749, 753-54, 345 A.2d 9 (1974); Watson v. Howard, 138 Conn. 464, 470, 86 A.2d 67
(1952).
Feinson v. Conservation Commission, 180 Conn. 421, 429 (1980).
In this situation, there is more than one conclusion that the Agency can reach. The Agency may grant the application as filed, or grant it subject to terms, conditions, limitations, modifications, or deny the application. There is more than one conclusion that the Agency can reach and therefore the agency cannot be ordered to grant the application. Thorne v. Zoning Commission, 178 Conn. 198, 206 (1979).
Thus once the owners' appeal is sustained, the only recourse that is available in the instant matter is that the matter be remanded to the Agency for their review. The Agency must allow a full public hearing on all matters presented to the Agency so that the owners may have an opportunity to cross-examine any witness or CT Page 2656 to contradict or explain any information presented to the Agency. Also, the Agency ought to have the public hearings recorded more effectively than has been done so far in this case. Substantial portions of the public hearings held in this matter have been categorized as inaudible. This is not a proper way to preserve the testimony presented at the public hearings.
The Agency must be made aware that procedural due process requires that decisions are based upon information presented to them at open public hearings where the owners have a right to explain, cross examine or refute said information presented. No other information "extra record" may be used to determine important factual issues. If such information is to be used, it is incumbent upon the Agency to disclose said information to the owners so that they may have the opportunity to explain or dispute said information before a decision is made by the Agency. Procedural due process requires that the Agency adopt and follow these requirements.
Accordingly, the appeal is sustained; and the matter is remanded to the Agency for further proceedings in accordance with this decision.
BYRNE, J.