[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Carolyn Massaro appeals a decision of the defendant commissioner of motor vehicles suspending her motor vehicles operators license for a period of one year. The defendant acted pursuant to General Statutes § 14-227b, based on the finding of his hearing officer that the plaintiff had refused to submit to a chemical test of the alcohol content of her blood. The plaintiff appeals pursuant to § 4-183. The court finds in favor of the plaintiff and remands the case for further proceedings.
The Glastonbury police arrested the plaintiff at 2:00 A.M. on April 18, 1993 and charged her with driving under the influence. The police transported the plaintiff to the Glastonbury police station, where they attempted to administer a breath test. The police report was admitted in evidence at the administrative hearing. According to the report, the police requested the plaintiff to take a breath test and she responded that she was "unsure." The police were then unable to get the machine to work. The machine did produce a paper tape indicating "refusal" and timed at 4.05 [4:05] A.M. When the machine failed to operate, the police requested the plaintiff to give a urine sample, but she refused. The police then proposed that they transport the plaintiff to the Wethersfield police department where she could CT Page 10519 take a breath test. She refused. The police determined that the plaintiff had refused to be tested and reported accordingly to the department of motor vehicles. The department held a hearing at the plaintiff's request.
At the hearing, in addition to the police report, the plaintiff and a member of the Glastonbury police department testified. The plaintiff testified that she never refused to take the breath test at the Glastonbury police department. She testified that she refused the urine test because of the lack of privacy and unsanitary conditions. She testified that she did not refuse to go to the Wethersfield station. What she did refuse to do was ride there alone with a male police officer without a female police officer.
At the administrative hearing, the plaintiff's attorney had a video tape of the events at the Glastonbury station. At the beginning of the hearing, the plaintiff's attorney stated, "We need the machine," meaning a machine for playing the tape. During her testimony, the plaintiff stated she hoped her version of those events would be shown on the tape. Later, during the hearing, the plaintiff's attorney called as witness a member of the Glastonbury police department, who had not been present at the time in question but who had viewed the tape. His testimony is vague as to the plaintiff's actual expression of refusal. The interchange between him and the plaintiff's attorney about what appears on the tape is likewise vague, especially regarding the request to take a urine test.
The hearing officer indicated that he had no questions for the police witness who had viewed the tape. The hearing officer, instead, stated, "And I will as we've discussed off the record, accept your representation that you did view the tape and that you did not see her actually say `no' to taking a breath test." Then, the hearing officer states, "Because of the nature of the docket, I don't have time to review the entire one hour of the tape. I'll make a decision based on the oral testimony, the testimony of the officer Martin, and what is contained within the A-44."
The hearing officer subsequently rendered his malfunctioning machine. There is the unequivocal and uncontradicted testimony of the plaintiff that she was willing to take the breath test. There is the plaintiff's testimony that conditions were too unsanitary and intrusive for the alternative urine test. There is the police CT Page 10520 officer's opinion, recorded in his report but unsupported by any observed facts, that the plaintiff refused the urine test because she "seemed to have some type paranoia with male police officers feeling that I would somehow sexually assault her." In short, there are indications that facts might exist that could have led the hearing officer to determine that the plaintiff, under the particular and perhaps unique circumstances of this case, did not refuse to submit to reasonable testing procedures.
Again, in the ordinary case, indications that the hearing officer did not have in evidence all of the facts relevant and material to his decision might not be cause to remand the case for the taking of further evidence. In this case, however, the hearing officer refused to consider such evidence, the video tape, when it was right there at the hearing and the plaintiff was imploring him to view it. The court notes that the hearing officer's expressed reason for effectively excluding this evidence was that he did not wish to spend the necessary time on it.
This court has previously held that the refusal to permit a plaintiff in a license suspension hearing to pursue and introduce evidence relevant to a core issue to be decided by the hearing officer essentially denied the plaintiff due process of law.Coracci v. Commissioner of Motor Vehicles, 42 Conn. Sup. 599
(1993), citing Balch Pontiac-Buick, Inc. v. Commissioner of MotorVehicles, 165 Conn. 559, 569 (1973). See also General Statutes § 4-177c. Based on the circumstances of this case as summarized above, the principles set forth in the Coracci andBalch Pontiac-Buick cases, supra, and the provisions of §4-177c, the court concludes that the hearing officer abused his discretion in refusing to view the video tape and giving it what weight it might deserve in making his ultimate findings of fact and conclusions of law.
The appeal is sustained and the case is remanded, to the department for further proceedings. Such further proceedings shall be limited to the addition of the video tape to the evidence in the record, reconsideration of his decision by the hearing officer after viewing and considering the tape and the rendering of a new final decision affirming, modifying or reversing his original decision.
MALONEY, J. CT Page 10521